Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/03/2019 09:08 AM CDT

Lucinda D. Moore, appellee, v.
Thayne D. Moore, appellant.
___ N.W.2d ___

Filed March 22, 2019.    No. S-18-273.

1. **Divorce: Attorney Fees: Appeal and Error.** In an action involving
a marital dissolution decree, the award of attorney fees is discretion-
ary with the trial court, is reviewed de novo on the record, and will be
affirmed in the absence of an abuse of discretion.
2. **Divorce: Child Support: Appeal and Error.** In an action involving
a martial dissolution decree, factual determinations as to childcare
expenses incurred are reviewed de novo on the record for an abuse
of discretion.
3. **Minors: Child Support.** Supervision of children in the form of day
camps, lessons, or activities may under the circumstances constitute
childcare so long as such supervision is reasonable, in the child's best
interests, and necessary due to employment or for education or training
to obtain a job or enhance earning potential.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the
reasons or rulings of a trial judge are clearly untenable, unfairly depriv-
ing a litigant of a substantial right and denying just results in matters
submitted for disposition.
5. **Attorneys at Law: Trial: Stipulations: Parties.** Stipulations volun-
tarily entered into between the parties to a cause or their attorneys, for
the government of their conduct and the control of their rights during
the trial or progress of the cause, will be respected and enforced by the
courts, where such stipulations are not contrary to good morals or sound
public policy.
6. **Courts: Trial: Stipulations: Parties.** Courts will enforce valid stipula-
tions unless some good cause is shown for declining to do so, especially
where the stipulations have been acted upon so that the parties could not
be placed in status quo.
7. **Divorce: Stipulations: Appeal and Error.** As in other matters involv-
ing dissolution decrees, a court's decision whether to approve and

honor a stipulation is reviewed de novo on the record for an abuse of discretion.

8. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

9. **Divorce: Attorney Fees.** In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed in part as modified, and in part vacated.

John D. Icenogle, of Bruner Frank, L.L.C., for appellant.

Heather Swanson-Murray, of Swanson Murray Law, L.L.C., P.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.
## I. NATURE OF CASE
The ex-husband appeals from the district court's order that he reimburse his ex-wife for half of certain "work related daycare expense[s]" for the parties' three children, as required by the dissolution decree, and as required by Neb. Ct. R. § 4-214 (rev. 2016) of the Nebraska Child Support Guidelines, which states that "[c]are expenses for the child" shall be allocated to the obligor parent. The ex-husband asserts that none of the expenses that the ex-wife testified she incurred as a means of providing adult supervision for her children while she worked, consisting of day camps, overnight camps, lessons, sitters, and transportation to and from the same, qualified as "work related daycare expense[s]" or "[c]are expenses for the child." He argues they were instead merely "activities." The ex-husband also asserts that the district court erred in awarding to the

ex-wife $3,500 in attorney fees when the court found that the ex-husband's complaint to modify, which he voluntarily dismissed after the parties had their respective experts conduct psychological/custody evaluations of the children, was not frivolous. Finally at issue is whether the district court erred in ordering the ex-husband to pay $2,500 toward the ex-wife's expert's evaluation fees, when the parties had stipulated that they would each pay their own expert's fees.

## II. BACKGROUND

### 1. Decree

A decree of dissolution of the marriage of Lucinda D. Moore and Thayne D. Moore was entered on October 1, 2014. The decree ordered that Lucinda be given sole physical and legal custody over the parties' three minor children. One child was born in 2002, one in 2005, and one in 2006. Thayne was ordered to pay child support and "50% of said work related daycare expenses . . . within 10 days of being provided a receipt." He was also ordered to share in the children's medical expenses. Lucinda and Thayne were to inform each other of "activities or events" where a parent may participate. The order did not contain a provision specifically relating to payment of "activities or events."

### 2. Complaint to Modify

On September 10, 2015, Thayne filed a complaint to modify the decree due to a material change of circumstances. Thayne alleged that Lucinda was "unwilling to co-parent" with him and had been inflicting "substantial mental abuse" on their children. He asked the court to modify the decree by awarding sole physical and legal custody of the children to him. Lucinda generally denied the operative allegations of the complaint and asked that it be dismissed.

#### (a) Motions for Expert Evaluations

Lucinda moved for a "psychological/custody evaluation" of the children. Thayne joined the motion for a psychological/

custody evaluation and nominated an expert to conduct the evaluation, proposing that both parties share jointly in the expense. Lucinda proposed Dr. Theodore DeLaet as the expert to conduct the evaluation instead. On May 2, 2016, the court granted the motions for psychological/custody evaluations but ordered the parties to stipulate who should conduct the evaluation and how the costs of the evaluation should be divided.

Lucinda and Thayne were unable to reach an agreement on a single expert to perform the evaluation. They instead jointly stipulated that they would each use his or her own expert to conduct independent evaluations of the children and that they would each be solely responsible for his or her respective expert's fees and expenses. On June 3, 2016, the court issued an order approving the stipulation and providing that Lucinda and Thayne could have evaluations conducted by their respectively chosen experts, with Lucinda and Thayne to be solely responsible for their respective expert's fees and expenses.

### (b) Motion to Reduce Daycare
### Expenses to Judgment

On January 30, 2017, Lucinda filed a "Motion to Reduce Daycare Expenses to Judgment," in which she asked the court to determine daycare expenses owed by Thayne to Lucinda and reduce such expenses to a judgment against Thayne.

### (c) Thayne's Motion to Dismiss
### Without Prejudice

On February 15, 2017, the day before the scheduled hearing on Thayne's complaint for modification, Thayne moved to dismiss his complaint without prejudice. The motion to dismiss was made after the psychological/custody evaluations had been conducted. DeLaet's evaluation had not been available to Thayne until January 17, 2017. Neither Thayne's nor Lucinda's expert recommended a change in custody.

### (d) February 15, 2017,
### Order of Dismissal

The court granted Thayne's motion to dismiss the same day that the motion was filed. The court ordered each party to bear his or her own costs. The court did not at that time take up Lucinda's motion to reduce daycare expenses to judgment.

### (e) Lucinda's Motion for
### Attorney Fees

On February 21, 2017, Lucinda moved for an award of attorney fees incurred as a result of the dismissed complaint to modify and for such further relief as the court deemed equitable. Thayne responded with a motion, by "Special Appearance," to dismiss Lucinda's motion for attorney fees on the ground that it was the filing of a new lawsuit without service of process.

By an order dated June 19, 2017, the court denied Lucinda's motion for attorney fees. It still had not resolved her motion to reduce daycare expenses to judgment, however.

### (f) Order to Alter or Amend
### June 19, 2017, Order

Lucinda timely moved to vacate, alter, or amend the June 19, 2017, order on the ground that she had been denied an opportunity to be heard on her motion for attorney fees. On July 19, the court altered and amended its June 19 order.

The court took stock of Lucinda's unresolved motion to reduce daycare expenses to judgment and concluded that it was not a proper motion within the modification proceedings brought by Thayne. The court explained that the question of daycare expenses was not raised in the complaint or in Lucinda's answer to the complaint. The court concluded that the "motion" was a request for relief, which required a complaint and service of process. Thus, the court did not consider the motion as being properly before it.

In contrast, the court considered Lucinda's motion for attorney fees to be incidental to Thayne's motion to dismiss. Further, the court considered Thayne's motion to dismiss to be

a general appearance. It overruled Thayne's motion to dismiss Lucinda's motion for attorney fees.

The court altered and amended its June 19, 2017, order to state: "[Thayne's] Special Appearance is overruled. [Thayne's] Motion to Dismiss is sustained as to [Lucinda's] Motion to Reduce Daycare Expense to Judgment but overruled as to [Lucinda's] Motion for Attorney Fees."

The court did not at that time rule on Lucinda's motion for attorney fees.

### (g) Complaint to Reduce Daycare Expenses to Judgment

On August 1, 2017, Lucinda filed a "Complaint/Application to Reduce Daycare Expenses to Judgment" and served process. She asked for attorney fees and costs associated with the motion and such other relief as the court deemed just and equitable.

Evidentiary hearings were conducted to address Lucinda's motion for attorney fees and her complaint/application to reduce daycare expenses to judgment.

### (i) Daycare Expenses

In relation to her complaint/application to reduce daycare expenses to judgment, Lucinda sought reimbursement for what she described as "daycare expenses" incurred during 2015 and 2016 when the children were not in school. She testified that she had arranged "activities . . . that would serve as day care."

She chose the activities both for their enrichment and for the level of supervision they provided. Some of the activities were within walking or biking distance from the house, and the children would transport themselves to and from the activity. Others required transportation, and Lucinda incurred some expenses in paying young adults to transport the children or to watch them for shorter periods of time.

Lucinda explained that the children were not of an age where she thought it suitable for them to all be home by

themselves the entire time she was at work. Lucinda said that the oldest child would occasionally watch the younger two for shorter periods of time, but she did not believe it appropriate to have her oldest child watch her younger siblings full time during Lucinda's work day every day of school break. The oldest child was apparently 13 years old by the summer of 2016.

Lucinda testified that she generally worked from 6 a.m. to 2:30 p.m. but that on certain days, she worked from 6 a.m. to noon. Lucinda explained that her schedule fluctuated. She testified that all the expenses she sought reimbursement for were incurred while she was at work.

The expenses Lucinda sought reimbursement for as "daycare" fell roughly under five categories: day camps, overnight camps, lessons, sitters, and transportation. Lucinda testified that the expense of sending the children to a local daycare, where they had been cared for before, would have been significantly more, and she provided documentation of that fact.

Specifically, Lucinda sought 50 percent reimbursement for childcare services for her two younger children offered through the Kearney, Nebraska, public school system and run by school staff, which expenses totaled $130 in 2015 and $175 in 2016.

She sought reimbursement for three different volleyball camps which cost a total of $210 in 2015 ($90 for the oldest and $120 for the younger two) and a total of $120 in 2016 (for all three children).

She also sought reimbursement for 50 percent of the $130 fee incurred for a basketball camp in 2016. Lucinda sought 50 percent reimbursement for $375.90 incurred in sending the three children to a "Crossfit" speed and agility camp in 2015, which lasted from 9 to 11 a.m. each day, during a period of time when she worked until noon.

Lucinda also sought reimbursement of 50 percent of $250 in piano lessons, apparently for all three children, and $60 in dance lessons for the youngest child. For 2016, she sought 50

percent reimbursement for $120 in fees for a "tennis camp" that all three children attended, and which lasted 1½ hours each day. Lucinda testified that these lessons provided supervision while she was at work.

Lucinda submitted $81.20 in childcare costs provided by trusted young adults in 2015. She submitted $110 in transportation costs provided by trusted young adults and associated with getting the children to and from various camps and lessons.

Finally, Lucinda sought reimbursement for one-quarter of the expenses incurred in sending the three children to overnight camps during the summers of 2015 and 2016. The expenses for these camps, referring to the copies of the checks in the record, were $451 in 2015 and $490 in 2016, totaling $941.

### (ii) Attorney Fees and
### Expert Witness Fees

Lucinda reiterated her request for attorney fees and asked that she be reimbursed for the fees related to DeLaet's evaluation. Lucinda entered into evidence the itemized billing statement by DeLaet, which demonstrated a total fee of $7,000. The court also received the billing statement for $571.33 in hotel accommodations while evaluations were performed in Omaha, Nebraska, the location of DeLaet's office. The court accepted into evidence an affidavit by Lucinda's attorney, averring that since the complaint to modify, Lucinda had incurred $11,121.56 in attorney fees and costs. Itemized bills were attached to the affidavit. Lucinda believed that she should not be bound by the stipulation regarding expert fees, because the agreement contemplated that the expert reports would be submitted at the hearing on Thayne's complaint and such hearing was never held because of Thayne's voluntary dismissal.

### (h) February 21, 2018, Order

On February 21, 2018, the court ruled on Lucinda's motions to reduce daycare expenses to judgment, for attorney fees, and

expert fees. Citing *Nimmer v. Nimmer*,[1] the court explained that it had jurisdiction over the motion regarding daycare expenses pursuant to its continuing jurisdiction over the decree. And the court ultimately found that the claimed expenses should be "equitably treated as work-related childcare." Accordingly, the court granted Lucinda's motion and entered judgment against Thayne in the amount of $1,394.35. It appears from the record that the district court apportioned to Thayne 50 percent of the total expense for all the claimed expenses, except for the overnight camps. The court apportioned 50 percent of one-quarter, or one-eighth, of the total cost of $941 for the overnight camps.

The court explained that the camps and activities served a "dual purpose" of providing both a supervised environment during Lucinda's working hours and opportunities for academic or athletic development. Moreover, the cost of such care was less than half the cost of Lucinda's credible estimated cost for alternate childcare.

The court granted Lucinda's motion for attorney fees. The court explained that it was not doing so because Thayne's complaint to modify was frivolous; to the contrary, the court explained it appeared that Thayne had brought the complaint out of a credible concern for his minor children and that Lucinda took the complaint seriously enough to retain her own expert witness. The court further noted that DeLaet's evaluation, which appeared to be a factor in Thayne's motion to dismiss, was not available until approximately 1 month before Thayne filed his motion to dismiss.

The court considered Lucinda to be the prevailing party. The court noted that DeLaet's evaluation appeared to be one of the factors considered by Thayne in dismissing his complaint to modify. The court also took into consideration the fact that an earlier dismissal would have avoided significant cost.

---

[1] *Nimmer v. Nimmer*, 203 Neb. 503, 279 N.W.2d 156 (1979).

The court awarded Lucinda attorney fees in the amount of $3,500. The court also ordered, without additional explanation, that Thayne pay $2,500 toward Lucinda's expert's fees.

Thayne appeals.

## III. ASSIGNMENTS OF ERROR

Thayne assigns that the district court erred in (1) ruling that extracurricular activity costs constituted daycare expenses, (2) awarding attorney fees to Lucinda after determining that Thayne's case was not frivolous and dismissal was preferable to proceeding to trial, and (3) awarding expert witness fees without finding exceptional circumstances warranting the stipulation.

## IV. STANDARD OF REVIEW

[1] In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.[2]

[2] In an action involving a martial dissolution decree, factual determinations as to childcare expenses incurred are reviewed de novo on the record for an abuse of discretion.[3]

## V. ANALYSIS

### 1. CHILDCARE EXPENSES

Thayne first argues that the district court erred in finding that the claimed expenses fall under the category of "daycare" or "childcare." Although contempt actions are the proper means to enforce a prior court order, including a child support

---

[2] See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

[3] See, *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018); *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995), *overruled in part on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010); *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993).

decree,[4] Thayne does not take issue with how Lucinda's complaint was denominated.

Thayne points out that Neb. Rev. Stat. § 42-364.17 (Reissue 2016) provides:

A decree of dissolution, legal separation, or order establishing paternity shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations.

Thayne argues that because "day care," "extracurricular activity," and "education" are listed separately in § 42-364.17, they are necessarily distinct concepts. He argues that if Lucinda wished to be reimbursed for what were in reality extracurricular activities or education, she should have filed a complaint for modification of the decree.

Neb. Rev. Stat. § 42-364.16 (Reissue 2016) states that child support shall be established in accordance with guidelines provided by the rules of the Supreme Court, unless one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order. Under § 4-214 of the Nebraska Child Support Guidelines, the relevant terminology is "[c]are expenses for the child":

*Care expenses for the child* for whom the support is being set, *which are due to employment of either parent or to allow the parent to obtain training or education necessary to obtain a job or enhance earning potential*, shall be allocated to the obligor parent as determined by the court, but shall not exceed the proportion of the obligor's parental contribution (worksheet 1, line 6) and shall be

---

[4] See Neb. Rev. Stat. § 42-358(2) (Reissue 2016). See, also, e.g., *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

added to the basic support obligation computed under
these guidelines.

(Emphasis supplied.) We find this terminology to be inter-
changeable with the term "day care" utilized in § 42-364.17
and in the custody decree here at issue.

This is the first time our court has addressed whether
camps, lessons, and supervised activities can be considered
childcare expenses allocated as part of a decree of child sup-
port. Under similar guidelines in other states, camps and other
supervised activities are considered childcare expenses when
they provide supervision for a child in need of care during the
custodial parent's employment or educational training.[5] The
basic requirements for such expenses to be considered child-
care or daycare are that they be work- or education-related
and reasonable.[6]

Thus, the court in *Marriage of Mattson*[7] held that the trial
court did not abuse its discretion in ordering the noncusto-
dial parent to pay a share of YMCA; soccer; basketball; and
music, art, and drama camps, as well as other day activities,
on the grounds that they were reasonable and necessary "day-
care expenses" during school breaks. The court explained that
while the statutory scheme did not define daycare expenses
or provide guidelines for determining what types of expenses
are reasonable and necessary, it must interpret the language of
the statute consistent with the overall purpose of the statutory
framework of preventing a harmful reduction in the child's
standard of living and to allocate parental responsibilities in

---

[5] See, *Simpson v. Simpson*, 650 N.E.2d 333 (Ind. App. 1995); *Trausch-Azar
v. Trausch*, 983 S.W.2d 199 (Mo. App. 1998); *In re Arabian*, 151 N.H.
109, 855 A.2d 560 (2004); *Micciche v. Micciche*, 62 A.D.3d 673, 879
N.Y.S.2d 502 (2009); *Marriage of Mattson*, 95 Wash. App. 592, 976 P.2d
157 (1999); Laura W. Morgan, *Summer Camp Expenses and Child Support
Guidelines*, 17 No. 3 Divorce Litig. 47 (Mar. 2005).

[6] See Laura W. Morgan, Child Support Guidelines: Interpretation and
Application § 7.02 (2d ed. 2018).

[7] *Marriage of Mattson, supra* note 5, 95 Wash. App. at 602, 976 P.2d at 163.

accordance with the child's best interests. The court noted that although the children were 11 and 13 years of age, "[e]ven if their physical health and maturity might enable them to avoid harm without an adult present, complete lack of adult supervision during school vacations would not be in their best interests."[8]

The court in *Simpson v. Simpson*[9] similarly affirmed the district court's order requiring the noncustodial parent to pay a share of summer camp expenses for his 14-year-old child, despite his contention that the child could care for herself and even babysit others. The court noted that the child support guidelines did not set forth a specific age as to when childcare expenses are unnecessary and therefore unreasonable and that the determination of whether the expenses are necessary and reasonable rests in the sound discretion of the trial court.[10]

[3] We have repeatedly held that the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child.[11] We find no merit to Thayne's argument that because the Legislature listed in § 42-364.17 "day care," "extracurricular activity," and "education" separately, these are necessarily mutually exclusive concepts. Indeed, this court is hard pressed to imagine childcare that does not entail some educational or activity component, and the hard-line definition Thayne suggests is contrary to the flexible, fact-specific inquiries that otherwise govern child support.[12] We hold that supervision of children in the form of day camps, lessons, or activities may

---

[8] *Id.* at 600-01, 976 P.2d at 162. See, also, *Price v. Price*, 205 W. Va. 252, 517 S.E.2d 485 (1999).

[9] *Simpson v. Simpson, supra* note 5.

[10] See *id.*

[11] See, e.g., *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009); *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

[12] See, e.g., *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

under the circumstances constitute childcare so long as such supervision is reasonable, in the child's best interests, and necessary due to employment or for education or training to obtain a job or enhance earning potential.

[4] We review factual determinations as to childcare expenses incurred de novo on the record for an abuse of discretion.[13] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[14] As to the majority of the expenses found compensable by the district court, we find no such abuse of discretion.

The district court did not abuse its discretion in determining in light of the children's best interests that the expenses incurred for day camps, activities, lessons, sitters, and transportation constituted reasonable and necessary care while Lucinda was at work. There was no evidence that Thayne had objected to the particular nature of the camps, activities, and lessons chosen by Lucinda in order to provide supervision and care while she was at work. The camps, activities, lessons, sitter services, and transportation, occurred while Lucinda was at work. Lucinda explained that it was not suitable for the children to be home by themselves during the entire time she was at work. Thayne's counsel conceded at oral arguments that but for the camps, lessons, activities, sitters, and transportation, the children would have been supervised at a traditional daycare facility. Lucinda provided undisputed evidence that care at such a traditional daycare facility would have been more costly. Thus, we affirm the district court's finding that the

---

[13] See, *McCullough v. McCullough, supra* note 3; *Robbins v. Robbins, supra* note 3; *Hoover v. Hoover, supra* note 3. See, also, *Simpson v. Simpson, supra* note 5; *Trausch-Azar v. Trausch, supra* note 5; *In re Arabian, supra* note 5; *Micciche v. Micciche, supra* note 5; *Marriage of Mattson, supra* note 5; Morgan, *supra* note 5; Morgan, *supra* note 6.

[14] *Armkneckt v. Armkneckt*, 300 Neb. 870, 916 N.W.2d 581 (2018).

expenses for day camps, lessons, activities, sitters, and transportation were "[c]are expenses for the child" under § 4-214 or "day care" expenses under § 42-364.17 that Thayne had an obligation under the dissolution decree to pay.

But we find that the court's decision categorizing the overnight camps as work-related childcare was untenable. Though Lucinda sought only a portion of the total cost of those camps, most of the time spent in the overnight camps were not hours that Lucinda was working. The fees for such camps cannot be broken down by the hour. We have found no other court that considers overnight camps amenable to being considered work- or education-related childcare when the parent works only 8 hours per day. Furthermore, while not controlling, we note that overnight camps are not considered work-related childcare expenses for purposes of the federal child and dependent care tax credit.[15] Overnight camps might be appropriately specified as a shared expense in a support order, but the wording of the order here at issue did not put Thayne on notice that he would be responsible for overnight camps as "work related daycare expense[s]."

Therefore, we affirm the district court's order regarding childcare expenses with the exception of its apportionment of the costs of overnight camps, which we vacate as an abuse of discretion. We modify the award of $1,394.35 by deducting the $117.63 attributable to overnight camps. The amount of childcare owed shall thus be $1,276.72.

## 2. Expert Fees

[5,6] Next, Thayne argues that the district court should have honored the stipulation voluntarily entered into between the parties that they would each pay the fees of their respective experts. We agree. Stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of

---

[15] See U.S. Dept. of Treas., I.R.S. Publication 503, cat. No. 15004M, Child and Dependent Care Expenses (Dec. 19, 2017).

their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy.[16] Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo.[17]

[7] As in other matters involving dissolution decrees, a court's decision whether to approve and honor a stipulation is reviewed de novo on the record for an abuse of discretion.[18] But the district court failed to make any finding of good cause or other reasoning as to why it chose not to enforce the stipulation. Lucinda argues that such finding was implicit and that she demonstrated exceptional circumstances, specifically, that Thayne's last-minute voluntary dismissal of his complaint rendered her expert unnecessary, but the district court found that the expert's report was likely instrumental in Thayne's decision to dismiss the complaint.

Furthermore, the district court explicitly found that the complaint that prompted the expert evaluations was not frivolous and that the last-minute voluntary dismissal was not in bad faith. The parties acted in reliance upon the stipulation that had been approved by the court, each hiring their own expert. There was at the time of the February 21, 2017, order no means to return the parties to the status quo. Finally, there was no evidence that any portion of DeLaet's fees were incurred as a result of circumstances that were different than those present when the parties stipulated to pay their own expert fees.

There was simply no evidence by which the court could have found good cause for disregarding the stipulation and concluding that honoring the parties' stipulation would be

---

[16] *Martin v. Martin*, 188 Neb. 393, 197 N.W.2d 388 (1972).

[17] *Id.*

[18] See, *McCullough v. McCullough, supra* note 3; *Garza v. Garza, supra* note 2.

contrary to good morals or sound public policy. Thus, the court's award of a portion of the expert fees incurred, against the stipulated agreement expressly approved by the court stating that each party would be responsible for the fees of their own experts, was an abuse of discretion. We vacate the portion of the district court's order that awarded $2,500 in expert witness fees.

### 3. Attorney Fees

Lastly, Thayne asserts that the court erred in awarding Lucinda attorney fees in the amount of $3,500. Thayne argues that attorney fees were inappropriate because he voluntarily dismissed his complaint, which was brought in good faith. Lucinda does not cross-appeal the amount of the attorney fees awarded.

[8] Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[19] Attorney fees shall be awarded against a party who alleged a claim or defense that the court determined was frivolous, interposed any part of the action solely for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct.[20] Additionally, in dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties.[21] Finally, a uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.[22]

Thus, the fact that Thayne's complaint was not frivolous or maintained in bad faith did not prevent the court from awarding attorney fees.

---

[19] *Garza v. Garza, supra* note 2.

[20] See Neb. Rev. Stat. § 25-824 (Reissue 2016).

[21] See, e.g., *Garza v. Garza, supra* note 2; *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

[22] *Garza v. Garza, supra* note 2.

[9] In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.[23] In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.[24]

The district court found that Lucinda was the prevailing party. Although Thayne voluntarily dismissed his complaint to modify, Lucinda prevailed in her complaint to enforce the dissolution decree in relation to childcare expenses. Lucinda presented an affidavit by her attorney outlining over $11,000 in attorney fees and costs. We find no abuse of discretion in the award of $3,500 in attorney fees.

## VI. CONCLUSION

For the foregoing reasons, we affirm the February 21, 2018, order as modified and vacate the awards of $2,500 in expert witness fees and $117.63 in overnight camp expenses. The modified order awards $1,276.72 in childcare expenses and $3,500 in attorney fees.

AFFIRMED IN PART AS MODIFIED,
AND IN PART VACATED.

---

[23] See *id*.

[24] *Id.*