Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/23/2020 08:08 AM CDT

Timothy Ray Grothen, appellant, v.
Martha Sue Grothen, appellee.
___ N.W.2d ___

Filed June 16, 2020.    No. A-19-472.

1. **Motions to Vacate: Proof: Appeal and Error.** An appellate court will
   reverse a decision on a motion to vacate or modify a judgment only if
   the litigant shows that the district court abused its discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when
   reasons or rulings of a trial judge are clearly untenable, unfairly depriv-
   ing a litigant of a substantial right and denying just results in matters
   submitted for disposition.
3. **Divorce: Attorney Fees: Appeal and Error.** In an action involving
   a marital dissolution decree, the award of attorney fees is discretion-
   ary with the trial court, is reviewed de novo on the record, and will be
   affirmed in the absence of an abuse of discretion.
4. **Modification of Decree: Judgments.** A consent decree is usually
   treated as an agreement between the parties, and it is accorded greater
   force than ordinary judgments and ordinarily will not be modified over
   objection of one of the parties.
5. **Divorce: Motions to Vacate: Modification of Decree: Property
   Settlement Agreements.** Where parties to a divorce action voluntarily
   execute a property settlement agreement which is approved by the
   dissolution court and incorporated into a divorce decree from which
   no appeal is taken, its provisions as to real and personal property and
   maintenance will not thereafter be vacated or modified in the absence of
   fraud or gross inequity.
6. **Appeal and Error.** An appellate court is not obligated to engage in an
   analysis that is not necessary to adjudicate the case and controversy
   before it.
7. **Attorney Fees.** Attorney fees and expenses may be recovered only
   where provided for by statute or when a recognized and accepted uni-
   form course of procedure has been to allow recovery of attorney fees.

8. **Divorce: Attorney Fees.** In awarding attorney fees in a dissolution
action, a court shall consider the nature of the case, the amount involved
in the controversy, the services actually performed, the results obtained,
the length of time required for preparation and presentation of the case,
the novelty and difficulty of the questions raised, and the customary
charges of the bar for similar services.

Appeal from the District Court for Adams County: STEPHEN
R. ILLINGWORTH, Judge. Affirmed.

Richard L. Alexander, of Richard Alexander Law Office, for
appellant.

Robert J. Parker, Jr., of Seiler & Parker, P.C., L.L.O., for
appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Timothy Ray Grothen appeals the order of the district court
for Adams County which denied his application to modify
alimony. We find no abuse of discretion in the district court's
decision and therefore affirm.

## BACKGROUND

The marriage between Timothy and Martha Sue Grothen
was dissolved by decree in August 2012. Incorporated into
the decree was the parties' property settlement agreement, in
which Timothy agreed to pay Martha alimony of $2,500 per
month for 15 years. Additionally, as part of the division of
property, Timothy agreed to pay Martha $600,000 in cash.

In April 2018, Timothy filed an application to modify his
alimony obligation, alleging that his income had decreased
since 2012. A hearing on the application was held in March
2019. The evidence revealed that Timothy was 58 years old
and had worked as a farmer, growing corn and soybeans,
for more than 30 years. Until 2012, he farmed 800 acres of

land divided into five quarter sections. He rented four quarter sections, and he and Martha owned the other quarter, which Timothy received under the property settlement agreement.

After the decree was entered, however, two of the four rented quarter sections were sold. Thus, at the time of the modification hearing, Timothy was farming just 480 acres of land. For the remaining two rented quarter sections, Timothy paid $17,000 per quarter in rent in 2012, but starting in 2015, his rent increased to $35,000 per quarter. Despite the increase, according to Timothy, his rent remained "very reasonable" compared to the rent paid by other farmers. Timothy was asked whether he searched for additional farmland to rent after the loss of the previous two rented quarter sections, and he said that he "always keep[s] [his] radar out" but he had not specifically searched for more land.

In addition to the loss of a portion of land and increased rent prices, crop prices decreased significantly from 2012 through 2018. Timothy's expert witness testified that corn and soybean prices hit their peaks in 2012. Corn prices peaked in 2012 at $8.25 per bushel, and in 2018, the average price was $3.31. The highest price for soybeans in 2012 was $17.58 per bushel, and the average price in 2018 was $8.43. The expert explained that after corn and soybeans hit their peak prices in 2012, there was a significant decline for about 2 years; thereafter, prices stabilized a bit but continued trending downward. He said that crop prices are predicted to continue to stabilize with a potential to slightly increase over the next 6 or 7 years.

The property settlement agreement was based on Timothy's 2011 tax return, which showed a farm income of $167,955. His farm income increased in 2012 to $265,535. But over the next few years, the farm income continued to decrease such that Timothy's 2018 tax return depicted a farm loss of $3,973. In connection with his annual farm operating loan, Timothy files a financial statement with his bank every year. His 2012 financial statement listed his net worth as $1.553 million, whereas his 2018 statement indicated that his net worth was

$1.82 million. The majority of the 2018 value is due to the farmland he owns which is valued at $1.76 million.

Timothy was asked whether he saved any of his earnings from the profitable years, and he said that he had to borrow the $600,000 he owed Martha under the property settlement agreement; thus, rather than saving his earnings, he put them toward paying off that loan. In 2014, he inherited $100,000 in cash after the death of his father, which sum he also used to pay down the $600,000 loan. As of the time of the modification hearing, Timothy had paid off around $450,000 of the $600,000 loan.

Timothy testified that he began to have difficulty making his alimony payments in 2015. He borrowed money from the bank at that time in order to pay his farm expenses and alimony payments. He stopped paying regular alimony in July 2016, and in December 2017, the district court found him in willful contempt for failing to pay alimony. He was ordered to pay past-due alimony of $30,352.46 within 75 days, but he did not do so. In April 2018, he made a payment of $35,000 but was still in arrears more than $5,000 and has paid nothing since then.

Timothy said that he is not current on his alimony obligation because he cannot afford to make the payments. At the time of the modification hearing, he owed more than $33,000 in alimony. He explained that he had to borrow money to make the $35,000 payment in April 2018. He was asked whether he would be able to borrow additional money in order to satisfy his alimony obligation, and he said that it was the policy of the bank not to lend money on assets or equity but only on the ability to repay a debt. However, he admitted that he had not specifically asked his banker to borrow $30,000 to pay alimony and that he did not know what the bank would tell him.

The evidence indicated that Martha, age 56, stayed home with the parties' three children. She and Timothy opened a small gift shop, and she works there 45 to 50 hours per week,

but the business is not profitable. Since the divorce, Martha has had multiple health issues, including six surgeries, a bone infection requiring 100 infusions, peripheral artery disease, and arthritis in her back. She explained that her employment knowledge and history is in retail sales, and although most retail jobs require significant standing and lifting, she has the ability to sit down while working at her own store. It is very difficult for her to stand for long periods of time, and she was unsure whether she would have the freedom to sit down if she worked elsewhere.

Martha testified that she "[a]bsolutely" needs monthly alimony to meet her living expenses. She used $140,000 of the $600,000 payment she received in the divorce to purchase a house and has been relying on savings from that payment to pay her living expenses during the time Timothy has not been paying alimony. At the modification hearing, Martha estimated her net worth to be $350,000.

After the hearing, the district court entered an order denying the application to modify alimony. The court based its decision on several factors. First, it noted that Timothy had been a farmer for many years and that therefore, at the time he agreed to pay alimony, he was aware the farm economy fluctuated and his income could potentially change. In addition, when comparing the financial circumstances of the parties, the district court observed that Timothy's net worth increased by nearly $300,000 during a time of diminished farm prices, while Martha's net worth decreased, and that Timothy received all of the income-producing property in the divorce. Similarly, the court recognized that Timothy received the parties' income-producing property and therefore received more than half of the marital estate. And because the equalization payment from Timothy to Martha still resulted in a disparity in the division of the marital estate, alimony was clearly a factor in the agreed-upon property settlement.

Finally, the court noted that Timothy claimed that he could not afford to pay alimony and that the bank would not loan

him additional money. The court found this testimony not to be credible, finding it "incredible" that a banker would not loan money to someone with a high net worth and collateral for a loan. Ultimately, the court reasoned that if it were to grant the application to modify, "it would be unfair to [Martha] and a windfall for [Timothy]" given that Timothy has a net worth of $1.8 million and a means to support himself while Martha has a net worth of $350,000, a "non profitable business," and no ability to obtain other employment due to her health. The court therefore found that it "would not be fair and equitable to grant this application" and declined to modify the alimony obligation. The court found that Martha had not been paid alimony since April 2018 despite Timothy's net worth of $1.8 million. It concluded that Timothy's failure to pay was willful and that therefore, the doctrine of unclean hands barred his application for modification of alimony, and it awarded Martha attorney fees in the amount of $8,573.75. Timothy appeals.

## ASSIGNMENTS OF ERROR

Timothy assigns that the district court abused its discretion in (1) failing to modify alimony; (2) determining that his failure to satisfy his existing alimony obligation was willful and that thus, the doctrine of unclean hands precluded him from obtaining a modification of his alimony obligation; and (3) ordering him to pay Martha's attorney fees.

## STANDARD OF REVIEW

[1,2] An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

[3] In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

## ANALYSIS

*Modification of Alimony.*

Timothy first argues that the district court abused its discretion in denying his application to modify alimony based on his decrease in income. We disagree.

[4,5] The original alimony award was entered pursuant to a consent decree. A consent decree is usually treated as an agreement between the parties, and it is accorded greater force than ordinary judgments and ordinarily will not be modified over objection of one of the parties. *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998). The Supreme Court has stated that where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity. See, *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018); *Ryder v. Ryder, supra*. There is no allegation of fraud in the case before us. Therefore, the only issue is whether modification of the alimony award set forth in the decree is necessary to prevent a gross inequity.

Timothy argues that modification is warranted because his income has decreased since the time of the consent decree. A change in a party's income is a circumstance that may be considered in determining whether alimony should be modified. See *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992). However, the Nebraska Supreme Court in *Desjardins* recognized that it had recently considered a change in one party's financial circumstances in conjunction with changes in

the other party's situation. See, also, *Northwall v. Northwall*, 238 Neb. 76, 469 N.W.2d 136 (1991) (wife alleging that husband's income had increased and that hers had decreased); *Kelly v. Kelly*, 220 Neb. 441, 370 N.W.2d 161 (1985) (no material change of circumstances existed when wife's return to full-time employment and resulting increase in income were contemplated in original decree); *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985) (increase in wife's income, together with decrease in husband's income, did not justify decreasing husband's total alimony obligation); *Sloss v. Sloss*, 212 Neb. 610, 324 N.W.2d 663 (1982) (no material change in circumstances where both parties' financial conditions improved).

In addition, a court considering whether to modify an alimony award is not limited to considering the incomes of the parties. To determine whether modification of a divorce decree is warranted, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). When considering the appropriateness of an original alimony award, the Supreme Court has allowed consideration of the property owned by the parties. See, *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018) (fact that husband was awarded income-producing farmland valued in excess of $2 million not irrelevant to alimony determination); *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016) (in weighing request for alimony, court may take into account all property owned by parties, whether accumulated by joint efforts or acquired by inheritance); *Binder v. Binder*, 291 Neb. 255, 864 N.W.2d 689 (2015) (husband's ownership of 200 acres of farmland not irrelevant to alimony even though it was his premarital property).

In the present case, the district court considered that although Timothy's income had decreased since 2012, his net

worth had actually increased during that timeframe by approximately $300,000 to a total of more than $1.8 million in 2018. In addition, Timothy received the income-producing property in the divorce, was the sole owner of valuable farmland, and had the ability to borrow funds should it be necessary. On the other hand, Martha received a $600,000 equalization payment in 2012, but since then, her net worth has decreased, partially because she did not receive any alimony payments after April 2018. The district court recognized Martha's health problems and her testimony that her physical condition would make it difficult for her to obtain other employment.

In *Binder v. Binder, supra*, the Supreme Court considered whether an original alimony award was an abuse of discretion. Both parties were in their nineties and retired with no wage income. The court observed that while the wife had exhausted nearly all of her assets, the husband had the power to dispose of more than 200 acres of farmland, recognizing that the land was not irrelevant to alimony even though it was the husband's premarital property. See *id*. Similarly here, Martha's health problems limit her ability to earn income, as the district court noted, and although Timothy's income has decreased, he retains property worth over $1 million.

We understand that circumstances have changed since entry of the consent decree, whether the changes were foreseeable or not. Timothy now has less land to farm, his rent has more than doubled, and crop prices have dramatically decreased. However, because alimony was originally ordered pursuant to an agreement between the parties, the issue is not whether there has been a material change in circumstances, but, rather, whether the continued alimony results in gross inequity. See, *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018); *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015). Timothy has greater opportunity to change his financial circumstances than Martha. And as the district court observed, the parties agreed in the property settlement agreement that Timothy should receive a larger share of the marital estate in

exchange for Martha's receiving an equalization payment and alimony. Ultimately, when considering the parties' comparative financial circumstances at the time of the modification hearing, the district court concluded that granting the application and modifying or terminating alimony would be "unfair" to Martha and would result in a windfall for Timothy. In other words, declining to modify alimony would not result in gross inequity. We conclude that this decision was not an abuse of discretion.

[6] Given this conclusion, we need not address whether the district court abused its discretion in denying the application to modify based on the doctrine of unclean hands. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

*Attorney Fees.*

[7] Timothy also argues that the district court erred in awarding Martha attorney fees. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). Attorney fees shall be awarded against a party who alleged a claim or defense that the court determined was frivolous, interposed any part of the action solely for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct. *Id*. Additionally, in dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Id*. Finally, a uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id*.

[8] In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Id*. In awarding attorney fees in a dissolution action, a court shall consider the nature

of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id*.

In the present case, Martha presented an affidavit by her attorney detailing attorney fees and costs related to the modification matter in the amount of $8,573.75. The district court found that the amount of fees Martha sought was fair and reasonable, and it awarded her the amount requested, reasoning that she was the prevailing party and had not received alimony since April 2018 and that Timothy's failure to pay alimony was willful. Given the court's rationale, the nature of the case, and the financial circumstances of the parties, we cannot say the district court's decision to award attorney fees to Martha was an abuse of discretion.

## CONCLUSION

The district court did not abuse its discretion in denying the application to modify alimony or awarding attorney fees to Martha. The court's order is therefore affirmed.

AFFIRMED.