IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HART v. HART


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


TRINA Y. HART, APPELLEE,

V.

HEIN W. HART, APPELLANT.


Filed January 19, 2021.    No. A-20-362.


Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed as modified.

Ryan Mick Swaroff, of Swaroff Law, L.L.C., for appellant.

Benjamin M. Belmont and Wm. Oliver Jenkins, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellee.


PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Hein W.Hart appeals from a decree entered by the District Court for Douglas County, dissolving his marriage to Trina Y. Hart. Hein challenges certain aspects of the division of property and debts, and the award of attorney fees to Trina. For the reasons that follow, we affirm as modified.

## BACKGROUND

Trina and Hein were married on March 14, 2014. Trina had three children from a previous marriage, who resided with the parties during the marriage. At the time of the dissolution, all of the children had reached the age of majority. Trina and Hein attempted to have a child through surrogacy before and during the marriage, but were unsuccessful.

- 1 -

The parties separated, and Trina filed a complaint for dissolution in April 2019. A temporary order awarded Trina exclusive use of the marital residence, and Hein was ordered to maintain the mortgage on the property along with associated household bills, as well as pay Trina's car payment of $822 per month. Trial was held on March 5, 2020. The following evidence was presented at trial.

The parties spent significant sums of money attempting to conceive a child through surrogacy, both during and prior to the marriage. Before the parties got married, Trina transferred $30,000 from a money market account containing funds inherited from her father into a checking account at Great Western Bank that she held prior to the marriage for the purpose of furthering the parties' surrogacy efforts. According to her testimony and bank statements, in the 2 months prior to the marriage, Trina paid $32,958.00 towards the efforts of conceiving a child with Hein from the Great Western Bank checking account. The balance of the Great Western Bank checking account on the date of the marriage was $4,020.22. Shortly after their marriage, Trina and Hein jointly borrowed $100,000 from Great Western Bank to further fund their plans of surrogacy. This $100,000 loan was secured by a $100,000 Certificate of Deposit No. 9245 held in Trina's name. Trina testified that the loan was secured by "borrowing against [her] children's inheritance" and that Certificate of Deposit No. 9245 was funded by combining three other certificates of deposit, jointly owned by Trina and her children, originating from inheritance funds that Trina's children received from Trina's father.

Trina testified that Hein was aware of the transactions made to secure the $100,000 loan from Great Western Bank and agreed to pay back the funds borrowed from Trina's children. Hein and Trina made monthly payments of $1,888.80 on the $100,000 loan for two years. On September 16, 2016, Trina cashed in Certificate of Deposit No. 9245 in order to pay off the balance on the loan. The proceeds of the certificate of deposit, $99,051.41, was deposited into Trina's Great Western Bank checking account on the same day. Trina then paid the remaining balance of the loan from her Great Western Bank checking account the same day, totaling $59,852.59. The balance of the proceeds of the certificate of deposit ($39,198.82) remained in the Great Western Bank checking account, which Trina testified was a reimbursement for her premarital contributions to the surrogacy attempts. At the time the parties separated, the Great Western Bank checking account had a balance of $69,810.86.

At the time of the marriage and continuing throughout, Hein worked as an insurance salesman for Washington National, which according to Trina was a successful business. Trina and Hein formed Trination, LLC, to operate Hein's insurance business during the marriage. Trination paid Hein's business expenses, as well as some personal expenses including maintenance of a home office, cell phones, and household utilities. Although tax documents indicate Hein is the sole owner of Trination, corporate documents show that Trina and Hein each hold a 50-percent interest in Trination and that Trina was the secretary of the company.

At some point during the marriage, Trina began working as a medical technician and was the part-time bookkeeper for Trination. However, during the pendency of the divorce proceedings, Trina suffered an accident and was unable to work. Trina was able to return to work for a short period of time before suffering a collapsed lung and positive diagnosis for an autoimmune condition. Due to her lung injury, she has restrictions preventing her from working and does not qualify for disability benefits due to her work history.

In March 2019, Trina transferred $10,000 from a bank account owned by Trination into the Great Western Bank checking account in order to pay bills and have funds while the parties were having marital disputes. Trina testified that she left "at least half" of the amount in the Trination account. Following Trina's withdrawal, the Trination account had a balance of $3,775.74. Statements from the Trination account show that in March 2019, the account had a beginning balance of $16,980.47 with deposits of $14,174.79 during the month and a final balance of $6,925.

The court entered a decree of dissolution of marriage on April 23, 2020. The decree ordered that the parties sell the marital home, with the balance of the net proceeds going to be used to pay marital debts in this order: $100,000 to be paid to Trina's adult children as reimbursement for the certificates of deposit used to secure the $100,000 loan; Great Western Bank in the approximate sum of $21,608; Barclay (Trina's credit card) in the approximate sum of $2,163; Bank of America (carpet) in the approximate sum of $3,051; and Capital One #8259 in the approximate sum of $21,400. Any remaining net proceeds were to be divided equally between the parties. The court awarded each party the household goods and personal property in their respective possession and further divided itemized personal property between the parties, noting that Hein was receiving $4,400 more in value than Trina, which was used to offset the value of the vehicle Trina was awarded. Trina was awarded a 2015 Audi Q5 along with any debt attached to the vehicle, while Hein was awarded a 2018 Jeep Grand Cherokee along with any debt attached to the vehicle. Hein was awarded an Edward Jones account in the approximate sum of $5,571 that he redeemed during the pendency of the marriage. The decree also ordered that Hein pay Trina 50 percent of all residuals or commissions received by Hein or Trination or its successors or assigns for any and all policy or products sold by Hein or anyone else in which he or the business entity receives commissions or residuals for policies or products sold between March 15, 2014 to May 1, 2019. The court ordered each party to assume any debt incurred in their respective names. The decree did not specifically address any other accounts or debts of the parties, nor did it include a chart showing the division of assets and debts. The decree provided that no alimony or cash equalization was awarded to either party. Finally, the decree ordered that Hein pay Trina $5,000 for attorney fees.

Hein now appeals.

## ASSIGNMENTS OF ERROR

Hein assigns that the district court erred by not including the Great Western Bank checking account as a marital asset in its division of the marital estate. Second, Hein assigns that the district court erred in its division of the marital estate regardless of whether the Great Western Bank checking account is included as marital property. Hein also assigns that the district court erred by awarding Trina 50 percent of all residuals and/or commissions received by Hein or Trination on policies or products sold between March 15, 2014 to May 1, 2019. Finally, Hein assigns that the district court erred by awarding $5,000 in attorney fees to Trina.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and

attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*. When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

## ANALYSIS

### GREAT WESTERN BANK ACCOUNT AS MARITAL PROPERTY

Hein first argues that the district court erred in not including the Great Western Bank account as marital property in the division of marital assets. While the district court did not make a specific finding regarding this account in its decree, it did not include the account as a marital asset to be awarded to either party.

It is well settled that under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). The first step in the equitable division of property is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id*. The second step in the equitable division of property is to value the marital assets and marital liabilities of the parties. *Id*. The third step in the equitable division of property is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *White v. White, supra*. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id*.

All property accumulated and acquired by either spouse during a marriage is part of the marital estate, unless it falls within an exception to this general rule. *White v. White, supra*. The marital estate does not include property that a spouse acquired before the marriage, or by gift or inheritance. *Id*. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. The burden of proof rests with the party claiming that property is nonmarital. *Id*.

Hein argues that the Great Western Bank checking account was marital property because Trina continually commingled it with marital property. Specifically, Hein argues that Trina commingled marital funds when she deposited the funds from the certificate of deposit into the Great Western Bank checking account, and because the district court concluded that the funds from the certificate of deposit were a marital debt to Trina's children after the parties' used the certificate of deposit to pay off the $100,000 loan. Further, Hein argues that Trina used the Great Western Bank checking account to pay off a credit card used for marital expenses. Lastly, Hein argued that Trina transferred $10,000 from the Trination checking account to the Great Western Bank account in March 2019.

Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id.* If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id.*

Upon our de novo review, the record supports a finding that the Great Western checking account was properly excluded from the marital estate as Trina's separate property. Clearly, Trina owned this account prior to the marriage and Hein was never added as an account holder, or had access, to the account during the marriage. The bank statements for this account were received as an exhibit at trial and show the deposits and withdrawals before and during the marriage. Trina testified that she used the account for the deposit of child support payments for her daughters as well as for inheritance money that she received. The statements show that on January 23, 2014, Trina had a balance of $23,119.08 in the account. On February 13, Trina transferred $30,000 from a money market account containing funds inherited from her father into the account. Thus, 2 months prior to the marriage, Trina had approximately $53,000 in this account. Nearly $33,000 was used from this account to further the parties' surrogacy efforts in the 2 months prior to the marriage. On the day of the marriage, March 15, the account had a balance of $4,020.22. In 2016, after depositing the proceeds from Certificate of Deposit No. 9245 into the Great Western account and paying off the balance of the parties' joint loan, Trina retained the balance of the CD money of approximately $39,000 in her account. At the time of the parties' separation, the Great Western account had a balance of $69,810.86.

For purposes of a commingling analysis, a spouse can establish a "tracing link" through his or her own testimony, subject to the trial court's assessment of his or her credibility. See *Brozek v. Brozek, supra*. Here, Trina was able to trace the source of the deposits in and payments from her premarital Great Western Bank account before and during the marriage, both through her testimony and the bank records. The record shows that nearly all of the funds deposited in the Great Western Bank account are directly traceable to Trina's separate property, including premarital inheritance funds. The fact that Trina deposited funds from the Trination account prior to the separation, or paid some marital debts from the account, does not necessarily convert the account to a marital asset as urged by Hein. We have recognized that any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017). We conclude that Trina did not commingle the bank account to the extent that it lost its nonmarital character. Therefore, we can find no abuse of discretion by the district court in failing to include the account in the marital estate.

However, that does not end our analysis. As noted above, Trina retained approximately $39,000 in this account after using the CD proceeds to pay off the parties' joint debt. This debt was secured by the CD in the amount of $100,000. The court included repayment of this $100,000 CD as a marital debt. We find the exclusion of the $39,000 CD proceeds from the marital estate while including the entire $100,000 as a martial debt to be an inequitable result. The $39,000 proceeds from the CD should be considered marital property to the extent that it is derived from a marital debt. Thus, we find that the sum of $39,000 retained by Trina should be considered marital

property and Trina should pay to Hein one-half of this amount, or the sum of $19,500. This judgment shall be paid within 60 days of the issuance of the mandate. We modify the decree accordingly.

## DIVISION OF MARITAL PROPERTY

Hein also argues that even if we determine that the district court did not err in awarding the Great Western Bank account to Trina, the court erred in its overall division of property. Hein argues that the division was inequitable, with Trina being awarded a greater value of the marital estate. Our review of this assigned error is hampered by the fact that the parties presented conflicting evidence about what assets and debts should be included in the marital estate (beyond the Great Western Bank account discussed above) as well as conflicting evidence of the value or amount of these assets and debts, and the failure of the district court to address some of these assets and debts in the decree of dissolution. The district court did not make specific findings regarding what assets and debts were considered marital versus nonmarital, and did not include a table showing the overall division of assets and debts.

The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *White v. White, supra*. Taking into consideration our inclusion of $39,000 from Trina's Great Western Bank account in the marital estate, we conclude that the remaining division of the marital assets and debts was fair and reasonable under the circumstances of this case. We cannot say that the district court's division of the parties' assets and debt amounted to an abuse of discretion.

## AWARD OF RESIDUALS AND COMMISSIONS FROM TRINATION

Hein argues that the district court erred when it awarded Trina 50 percent of any residuals or commissions received by Hein or Trination on policies or products sold between March 15, 2014 and May 1, 2019. Hein argues that the income derived from the policies was solely due to his efforts in travelling and meeting with clients. However, the record also shows that while Hein sold the policies, Trina worked as the company secretary.

This case is similar to *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017), where the court found that the wife was entitled to 50 percent of insurance termination payments to be paid to the husband in the future on policies sold by the husband during the marriage. Similarly, we find no abuse of discretion by the district court in the division of the future residual or commission income earned by Hein from the sale of policies during the marriage.

## AWARD OF ATTORNEY FEES

In his final assignment of error, Hein argues that the district court abused its discretion in awarding Trina attorney fees. Specifically, Hein argues that he should not be required to pay attorney fees because of the alleged inequitable property division and taking into consideration the household expenses he paid during the divorce proceedings, which he claims totaled over $21,000.

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general

equities of the case. *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018). As we determined above, we have found no abuse of discretion in the district court's property division, as modified. Further, Hein consistently earned more than Trina during the marriage and at the time of the divorce Trina was unable to work due to health issues. Hein was not ordered to pay alimony. Considering all of the circumstances and the equities of the case, we do not find that the district court abused its discretion in awarding Trina attorney fees.

CONCLUSION

For the above stated reasons, we affirm the decision of the district court as modified to require Trina to pay Hein the sum of $19,500 within 60 days of the issuance of the mandate.

AFFIRMED AS MODIFIED.