Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/26/2021 08:09 AM CDT

Timothy Ray Grothen, appellant, v.
Martha Sue Grothen, appellee.
___ N.W.2d ___

Filed December 31, 2020.    No. S-19-472.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.
3. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Statutes.** A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme, giving effect to every provision.
6. **Modification of Decree: Alimony: Property Settlement Agreements.** Where the parties have not expressly precluded or limited modification of alimony pursuant to Neb. Rev. Stat. § 42-366(7) (Reissue 2016), an alimony provision that was agreed to by the parties as part of a property settlement agreement may later be modified in accordance with Neb. Rev. Stat. § 42-365 (Reissue 2016).
7. **Modification of Decree: Alimony: Good Cause: Words and Phrases.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), alimony may be modified for good cause shown, and "good cause" means a material and substantial change in circumstances and depends upon the circumstances of each case.
8. **Divorce: Alimony.** In determining alimony, a court should consider the income and earning capacity of each party and the general equities of

the situation. Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award.

9. **Alimony.** There is no mathematical formula by which alimony awards can be precisely determined.

10. **Modification of Decree: Words and Phrases.** A material change of circumstances constituting grounds for modification of a dissolution decree means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

11. **Modification of Decree: Alimony: Good Cause.** While good cause is demonstrated by a material change in circumstances, any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order.

12. **Modification of Decree.** To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought.

Petition for further review from the Court of Appeals, Moore, Riedmann, and Welch, Judges, on appeal thereto from the District Court for Adams County, Stephen R. Illingworth, Judge. Judgment of Court of Appeals affirmed.

Richard L. Alexander, of Richard Alexander Law Office, for appellant.

Robert J. Parker, Jr., of Seiler & Parker, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

### NATURE OF CASE

On appeal to the Nebraska Court of Appeals, Timothy Ray Grothen claimed that the district court for Adams County erroneously denied his application for modification of his alimony obligation in the decree dissolving his marriage to Martha

Sue Grothen. The Court of Appeals affirmed the district court's order denying modification and reasoned, in part, that because the original alimony award was agreed to by the parties as part of a property settlement agreement, the alimony provision could not be modified in the absence of fraud or gross inequity, which Timothy had failed to show. See *Grothen v. Grothen*, 28 Neb. App. 505, 945 N.W.2d 902 (2020). We granted Timothy's petition for further review.

We conclude that the district court properly used the good cause standard set forth in Neb. Rev. Stat. § 42-365 (Reissue 2016) and that it did not err when it determined that, under that standard, modification of alimony was not appropriate. We further conclude that although the Court of Appeals erroneously applied a fraud or gross inequity standard to modification of alimony, it nevertheless reached the correct result when it affirmed the denial of modification of alimony. We therefore affirm the decision of the Court of Appeals, which affirmed the district court's order denying modification.

## STATEMENT OF FACTS

In August 2012, the district court filed a decree dissolving Timothy and Martha's marriage. The decree incorporated the parties' property settlement agreement, pursuant to which they agreed, inter alia, that Timothy would be awarded farmland that was the bulk of the marital estate and that he would pay Martha $600,000 in cash. The parties also agreed that Timothy would pay Martha alimony of $2,500 per month for 15 years.

In April 2018, Timothy filed an application to modify his alimony obligation. He alleged that his income, which came mainly from growing corn and soybeans on the farmland he owned and on other farmland he rented, had decreased significantly since 2012. At a hearing on the application in March 2019, Timothy presented evidence that he was no longer farming two of four rented quarter sections he had farmed in 2012, that rent he paid on the two quarter sections he was still farming had doubled since 2012, and that crop prices for corn

and soybeans in 2018 were half of what they had been in 2012. The property settlement in 2012 had been determined based in part on Timothy's 2011 tax return which reported farm income of $167,955; Timothy's 2018 tax return reported a farm loss of $3,973. Conversely, Timothy's annual financial statements showed that his net worth in 2012 was $1.553 million and that by 2018, it had increased to $1.82 million, the bulk of which was farmland valued at $1.76 million.

Martha cross-examined Timothy regarding efforts he could undertake to continue making alimony payments, such as finding additional farmland to rent or obtaining an operating loan using the farmland he owned as collateral. Timothy testified that he always kept his "radar out" but had not specifically sought to replace the rented quarter sections, and although he admitted he had not asked the bank about a loan, he testified that it was the bank's policy to give loans based only on ability to repay and not on assets or equity. Timothy also testified that he had not been able to save his earnings from the "boom" years of 2011 and 2012 because he had taken out a loan to pay the $600,000 property settlement obligation to Martha and that the money he might otherwise have saved had been applied to that loan.

Martha also presented evidence regarding her current financial circumstances. Martha had stayed home during the marriage to raise the parties' three children, but at some point, she had begun working at a small gift shop the parties owned. She continued working at the gift shop after the divorce, but she testified that the business was not profitable. She also testified that since the divorce, she had had various medical issues that increased her expenses and limited her ability to obtain employment other than working in the gift shop where she had more control over her activities.

After the hearing, the court entered an order denying Timothy's application for modification of alimony. The court began its analysis by citing § 42-365, which provides in part that alimony may be modified or revoked for "good cause"

shown. The court cited *Metcalf v. Metcalf*, 278 Neb. 258, 265, 769 N.W.2d 386, 391 (2009), for the proposition that for purposes of § 42-365, "[g]ood cause means a material and substantial change in circumstances and depends upon the circumstances of each case." The court noted that Martha argued that because the decree of dissolution in this case incorporated a property settlement agreement, it was a "consent decree [that] is accorded greater force than ordinary judgments and ordinarily will not be modified over [the] objection[s] of one of the parties." However, the court's modification analysis focused on whether there had been a material change in circumstances.

The court concluded that Timothy had not shown a material change in circumstances that warranted modification of alimony. In reaching this conclusion, the court cited precedent regarding factors that should be considered with regard to a request to modify alimony. Factors the court stated it considered were as follows: that a change in circumstances does not warrant modification if the change was in the contemplation of the parties at the time of the decree (citing *Metcalf v. Metcalf, supra*); that in determining whether there has been a material change in circumstances, the court should compare the financial circumstances of the parties at the time of the decree with their financial circumstances at the time modification is requested (also citing *Metcalf v. Metcalf, supra*); and that in determining whether alimony is appropriate, a court should consider the fact that one of the parties has been awarded all the income-producing property from the marriage (citing *Grams v. Grams*, 9 Neb. App. 994, 624 N.W.2d 42 (2001)). The court determined that each of these considerations weighed against modification of alimony in this case.

The court stated that Timothy relied on changes in the farm economy to argue that there had been a material change in circumstances with respect to his income, but the court reasoned that an experienced farmer would know that farm prices are cyclical and that therefore, a fluctuation in commodity

prices was something that would have been in the contemplation of the parties at the time the decree was entered in 2012. The court rejected Timothy's contention that because of decreased income, he could not make the alimony payments. The court reasoned that Timothy could borrow $30,000 to pay the alimony. Noting Timothy's net worth of $1.82 million, the court specifically discredited Timothy's testimony that he could not borrow $30,000.

Regarding the parties' comparative financial circumstances, the court noted that Timothy was awarded the bulk of the marital estate and that his net worth was much greater than Martha's. The court determined that the $600,000 payment from Timothy to Martha was not sufficient to equalize the parties' relative financial circumstances and that therefore, it was clear that alimony was awarded to Martha to make the equities as between the parties closer to a 50-50 split. The court finally reasoned that if it were to reduce or terminate Timothy's alimony obligation, it would be unfair to Martha and a windfall to Timothy because Timothy's net worth was substantially greater than Martha's and Timothy had been awarded the main income-producing property in the dissolution.

In its order, the district court also cited precedent to the effect that the doctrine of unclean hands will bar an application for modification of child support or alimony if the applicant has not satisfied existing obligations and the failure to pay is found to be willful. The court stated that Timothy had failed to pay monthly alimony since April 2018, when he filed his application for modification, and the court found that Timothy's failure to pay alimony was "willful because he had the financial ability to borrow the money and chose instead to pay nothing for a year after having previously been found in contempt." In addition to denying Timothy's application for modification, the court ordered Timothy to pay Martha's attorney fees and to pay costs of the action.

Timothy appealed the denial of his application for modification of alimony to the Court of Appeals. He claimed that the district court erred when it (1) denied his application

to modify alimony, (2) determined that his failure to pay alimony was willful and therefore the doctrine of unclean hands precluded him from obtaining a modification of alimony, and (3) awarded attorney fees to Martha. The Court of Appeals concluded that the district court did not abuse its discretion when it denied the application for modification on its merits. Because of this conclusion, the Court of Appeals stated that it need not consider the alternative basis for denying the application based on the unclean hands doctrine. The Court of Appeals also concluded that the district court did not abuse its discretion when it awarded attorney fees to Martha. The Court of Appeals therefore affirmed the district court's order, which denied Timothy's application to modify alimony and awarded attorney fees to Martha.

With regard to the merits of the application for modification, the Court of Appeals began its analysis by noting that the original alimony award was entered pursuant to the parties' property settlement agreement. The Court of Appeals then cited this court's decision in *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018), for the proposition that

> where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity.

*Grothen v. Grothen*, 28 Neb. App. 505, 511, 945 N.W.2d 902, 907 (2020). The Court of Appeals stated that because there was no allegation of fraud in the present case, the only issue was whether modification of alimony was necessary to prevent a gross inequity.

The Court of Appeals analyzed this case under the gross inequity standard. The Court of Appeals acknowledged that the decrease in income alleged by Timothy was a circumstance that could be considered in determining whether alimony should be modified. But the Court of Appeals also

noted precedent to the effect that a change in one party's financial circumstances should be considered in conjunction with changes in the other party's situation and that such consideration was not limited to comparing the parties' respective incomes, but also included consideration of property owned by the parties. In this regard, the Court of Appeals noted that in addition to considering the decrease in Timothy's income, the district court also considered the following factors: that since the decree was entered, Timothy's net worth had increased approximately $300,000 to $1.8 million; that Timothy had been awarded the income-producing marital property; and that Timothy had the ability to borrow funds should it be necessary. The Court of Appeals noted that in comparing the parties' circumstances, the district court had observed that although Martha had received a $600,000 equalization payment pursuant to the decree of dissolution, her net worth had decreased, partially due to Timothy's failure to pay alimony, and that Martha had health issues that made it difficult for her to obtain employment.

In summation, the Court of Appeals acknowledged that, whether changes in Timothy's farm income were foreseeable in 2012, Timothy's financial circumstances had changed since the entry of the decree. However, the Court of Appeals again cited our decision in *Carlson v. Carlson, supra*, to state that "because alimony was originally ordered pursuant to an agreement between the parties, the issue is not whether there has been a material change in circumstances, but, rather, whether the continued alimony results in a gross inequity." *Grothen v. Grothen*, 28 Neb. App. at 513, 945 N.W.2d at 909. The Court of Appeals read the district court's reasoning that modification of alimony would be unfair to Martha and a windfall to Timothy as a recognition by the district court that declining to modify alimony would not result in a gross inequity. The Court of Appeals therefore concluded that the district court did not abuse its discretion when it denied Timothy's application for modification of alimony.

We granted Timothy's petition for further review of the Court of Appeals' decision.

## ASSIGNMENTS OF ERROR

Timothy claims that the Court of Appeals erred when it applied a "'gross inequity'" standard rather than the "'good cause'" standard set forth in § 42-365 for modification of an award of alimony. He also claims that the Court of Appeals erred when it affirmed the district court's determination that the change in his income since the entry of the decree did not justify a modification of alimony. Timothy specifically claims that the Court of Appeals and district court both erred when they failed to evaluate alimony as being determined primarily by a party's income rather than his or her assets.

## STANDARDS OF REVIEW

[1,2] Statutory interpretation presents a question of law. *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id*.

[3,4] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

*Court of Appeals Erroneously Applied Gross*
*Inequity Standard to Modification*
*of Alimony Provision.*

Timothy first claims that the Court of Appeals erred when it applied a gross inequity standard to modification of the award of alimony. Timothy asserts that the proper standard

is that set forth in § 42-365, which allows modification of alimony for "good cause." We have interpreted "good cause" to mean a material and substantial change in circumstances, and it depends upon the circumstances of each case. See *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). We conclude that the Court of Appeals misread our precedent when it determined that a gross inequity standard should be applied to modification of alimony when the alimony provision in the original decree of dissolution was agreed to by the parties as part of a property settlement agreement and the alimony provision has not been designated as nonmodifiable under Neb. Rev. Stat. § 42-366(7) (Reissue 2016). That is, unless the parties' agreement specifically provides that alimony may not be modified, modification of alimony is governed by the "good cause" provision in § 42-365.

The Court of Appeals' decision in this case relied largely on *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018). In *Carlson*, we stated the proposition regarding modification of provisions of a property settlement agreement as follows:

> [W]here parties to a divorce action voluntarily execute a [property settlement agreement] which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions as to real and personal property *and maintenance* will not thereafter be vacated or modified in the absence of fraud or gross inequity.

299 Neb. at 543, 909 N.W.2d at 363 (emphasis supplied). The Court of Appeals understandably relied on the inclusion of the word "maintenance" in this standard when it understood "maintenance" to include "alimony" and conclude that an alimony provision that is agreed to by the parties as part of a property settlement agreement cannot be vacated or modified in the absence of fraud or gross inequity.

However, *Carlson* was not a case involving alimony, and we have not in modern times applied a fraud or gross inequity standard in a case involving modification of alimony. But

see *Williams v. Williams*, 119 Neb. 8, 226 N.W. 798 (1929) (referring in syllabus of court to fraud and also change in circumstances). The present case requires us to clarify the proper standard to review an application for modification of an alimony provision that was agreed to by the parties in connection with a property settlement agreement. As explained below, we conclude that statutory and case law authority does not support a fraud or gross inequity standard and instead the statutory "good cause" standard set forth in § 42-365 for modification of alimony and cases thereunder such as *Metcalf v. Metcalf, supra*, should apply. Our use of the word "maintenance" in *Carlson v. Carlson, supra*, should not be read as having changed our standard for evaluating requests to modify alimony.

In cases discussing the fraud and gross inequity proposition in connection with modification, we have also referred to § 42-366, which controls the initial decree and contains the requirement that real and personal property and maintenance in the initial decree must not be unconscionable. E.g., *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000). In some cases, we set forth the proposition as applying to provisions of a property settlement agreement without further specifying the nature of those provisions within the proposition. See, *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015); *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015). In other cases, we have specified that the proposition applies to "'provisions dealing with division of real and personal property, division of pension benefits, and division of stock.'" See *Peter v. Peter*, 262 Neb. 1017, 1027, 637 N.W.2d 865, 874 (2002). See, also, *Davis v. Davis*, 265 Neb. 790, 794, 660 N.W.2d 162, 165 (2003) (referring only to "'property provisions'"); *Gruber v. Gruber*, 261 Neb. 914, 919, 626 N.W.2d 582, 586 (2001) (referring only to "provisions dealing with division of pension benefits"). Regardless of the language in which the standard has been articulated, the cases in which we applied the fraud or gross inequity standard involved provisions to divide property or provisions related to the division of property. As noted,

this was true even when we stated the proposition as applying generally to "provisions" without specifying "property provisions." See, *Ryder v. Ryder, supra* (provision requiring one former spouse to assist other former spouse in obtaining loan to buy new residence); *Whitesides v. Whitesides, supra* (provision regarding division of one former spouse's interest in partnership); *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006) (provision requiring one former spouse to pay other spouse additional $75,000 if certain conditions met).

As noted above, *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018), did not involve alimony; instead, it involved post-majority child support. We reasoned that, as compared to support for minor children, post-majority child support was not statutorily mandated and, therefore, the appropriate standard for a request to modify a provision for post-majority child support should be the fraud or gross inequity standard we apply to property provisions of an agreed-upon property settlement agreement. Although we used the general term "maintenance" in the proposition, the holding in *Carlson* should be read as applying to the facts of the case concerning post-majority child support and not be read as governing modification of other types of "maintenance" such as alimony.

Our rationale for extending the fraud or gross inequity standard to post-majority child support in *Carlson* was that "the court could not have imposed the post-majority child support obligation in the first instance, so it lacks the authority to modify it as a child support obligation." 299 Neb. at 543, 909 N.W.2d at 362 (citing rationale from other states that held similarly with regard to modification of post-majority child support). That same rationale does not apply to alimony, which the court could impose in the first instance and which a court could later vacate or modify under the authority of § 42-365. In this regard, alimony is more similar to child support for minor children, and in *Reinsch v. Reinsch*, 259 Neb. 564, 569, 611 N.W.2d 86, 90 (2000), we held that the

"'fraud or gross inequity'" standard did not apply to modification of child support, and we noted instead that "we have consistently held that a party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered."

Property settlement agreements in a dissolution action are authorized by § 42-366. Although § 42-366 authorizes property settlement provisions for disposition of property owned by the parties, neither § 42-366 nor another statute appears to set forth standards for modifying such property terms at a later date. Instead, the fraud or gross inequity standard set forth above for modification of property terms agreed to as part of a property settlement was developed in case law.

[5] In contrast to modification of property, § 42-365 not only authorizes an order of alimony in a decree of dissolution, but it further provides for modification of alimony for "good cause" shown. Section 42-366(1) allows for a property settlement agreement to include, inter alia, "provisions for the *maintenance* of either [party]," and § 42-366(6) provides that "[a]*limony* may be ordered in addition to a property settlement award." (Emphasis supplied.) Thus, both § 42-365 and § 42-366 pertain to alimony. A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme, giving effect to every provision. *Archer Daniels Midland Co. v. State*, 290 Neb. 780, 861 N.W.2d 733 (2015). We therefore read §§ 42-365 and 42-366 together and give each statute effect when determining the proper standard for modification of an alimony provision that was agreed to by the parties as part of a property settlement agreement.

We addressed the interplay between §§ 42-365 and 42-366 in *Euler v. Euler*, 207 Neb. 4, 295 N.W.2d 397 (1980). In *Euler*, one party argued that § 42-365 was not applicable where the parties had entered into a property settlement agreement

under § 42-366. We disagreed and noted § 42-366(7), which provides, "Except for terms concerning the custody or support of minor children, the decree may expressly preclude or limit modification of terms set forth in the decree." We concluded that where there was no provision expressly precluding or limiting modification of the terms of the decree, the provisions of § 42-366(7) can and should be read in conjunction with the provisions of § 42-365, with effect being given to each statute. We concluded that "dissolution decrees may be modified with reference to alimony by the plain language of the statutes even if they are based on property settlement agreements, so long as the parties or the court have not provided otherwise in writing." *Euler v. Euler*, 207 Neb. at 9-10, 295 N.W.2d at 400.

Consistent with *Euler*, we stated in *Cooper v. Cooper*, 219 Neb. 64, 67, 361 N.W.2d 202, 204 (1985), that "this court's power to modify the alimony award is not affected by the fact that the decree is based on an agreement of the parties." See, also, Annot., 166 A.L.R. 675, § II at 676 (1947) (stating that majority of courts hold that "'where a court has the general power to modify a decree for alimony or support, the exercise of that power is not affected by the fact that the decree is based on an agreement entered into by the parties to the action'").

We recognize that in *Desjardins v. Desjardins*, 239 Neb. 878, 881, 479 N.W.2d 451, 454 (1992), a case involving a request for modification of the alimony provision in a consent decree, we cited authority for the proposition that a "'"consent decree is usually treated as an agreement between the parties [and] is accorded greater force than ordinary judgments and ordinarily will not be modified over objection of one of the parties."'" However, notwithstanding our narrative regarding consent decrees generally, in *Desjardins*, we did not apply the fraud or gross inequity standard; instead, we adhered to statute and stated that "[a]limony awards entered pursuant to a consent decree may be modified pursuant to § 42-365, which provides that such orders may be revoked or modified

'for good cause shown,'" which we stated was "demonstrated by a material change in circumstances." 239 Neb. at 880, 479 N.W.2d at 453.

[6,7] We conclude that our statutory and case law supports the conclusion that where the parties have not expressly precluded or limited modification of alimony pursuant to § 42-366(7), an alimony provision that was agreed to by the parties as part of a property settlement agreement may later be modified in accordance with § 42-365. Under § 42-365, alimony may be modified for good cause shown, and "good cause" means a material and substantial change in circumstances and depends upon the circumstances of each case. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). The Court of Appeals therefore erroneously determined that a gross inequity standard applied to Timothy's request for modification of the alimony provision in this case.

*District Court Applied Proper Standard and Did
Not Abuse Its Discretion, and Court of Appeals
Did Not Err When It Affirmed District Court's
Order Denying Modification.*

Timothy next claims that the Court of Appeals erred when it affirmed the district court's determination that the change in his income did not justify a modification of the alimony provision. We determine that the district court properly applied the standard under § 42-365 to its consideration of Timothy's request for modification of the alimony provision and that the district court did not abuse its discretion when it rejected his request. We therefore conclude that although the Court of Appeals erroneously applied a gross inequity standard, it did not err when it affirmed the district court's order which denied Timothy's request for modification of the alimony provision.

Timothy argues that the district court and the Court of Appeals both erroneously determined the propriety of his alimony obligation based on his assets rather than his income.

Timothy argues that this violated § 42-365, and he relies on the portion of § 42-365 that provides as follows:

> While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

Timothy argues that this portion of § 42-365 indicates that consideration of alimony should focus on income rather than assets because assets are the focus of a property division. Timothy contends that because he showed a significant decrease in his income, his alimony obligation should have been reduced.

In support of his argument that alimony should be determined based on income without regard for assets, Timothy quotes a portion of *Hotz v. Hotz*, 301 Neb. 102, 111, 917 N.W.2d 467, 475 (2018), in which we stated that "the relative economic circumstances of the parties are to be tested based on the income available after child support obligations, if any, have been accounted for." Timothy reads this to mean that determinations regarding alimony should focus on income to the exclusion of other aspects of the parties' economic circumstances. Timothy reads *Hotz* too broadly. The focus of *Hotz* was calculation of child support, and we held that the Nebraska Child Support Guidelines exclude "alimony between parents from their total monthly incomes for the purpose of calculating child support obligations for their children in modification proceedings." 301 Neb. at 111, 917 N.W.2d at 475. We were not concerned with determination or modification of alimony in *Hotz*, and we merely noted that to the extent income is a consideration in determining alimony, a court considers only "income available after child support obligations" and that "alimony [is] determined with [child support] obligations in

mind." 301 Neb. at 111, 917 N.W.2d at 475. Timothy therefore misreads *Hotz* as limiting the consideration of "economic circumstances" under § 42-365 to a consideration of income, and we reject his reading.

We further note that Timothy's assertion that only income should be considered in determining alimony is inconsistent with both the language of § 42-365 and our precedent applying it. Although § 42-365 makes a distinction between the purposes of property division and alimony, it does not state that alimony is to be determined based solely on the parties' respective incomes. To the contrary, as quoted above, § 42-365 states that the purpose of alimony is to provide for support and maintenance of one party by the other when circumstances, including "the relative economic circumstances" of the parties, make it appropriate. Section 42-365 therefore contemplates that economic circumstances other than income are relevant to the determination of alimony.

[8,9] In case law, we have stated that consideration of the relative economic circumstances of the parties includes consideration of not only income, but also other relevant factors. We have said that in determining alimony, "a court should consider the income and earning capacity of each party *and the general equities of the situation*. Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might *partially* justify an alimony award." *Dooling v. Dooling*, 303 Neb. 494, 515, 930 N.W.2d 481, 500 (2019) (emphasis supplied). We have further stated that in contrast to the calculation of child support under the governing guidelines, "there is no mathematical formula by which alimony awards can be precisely determined." *Binder v. Binder*, 291 Neb. 255, 261, 864 N.W.2d 689, 694 (2015). This precedent and the requirement in § 42-365 to consider "relative economic circumstances" of the parties contradict Timothy's assertion that alimony should be determined based solely on the income of the parties. Instead, income is an important, but not an exclusive, consideration, and alimony should be based not only on income, but also

on the general equities of the situation considering the relative economic circumstances of the parties.

[10,11] The district court in this case considered income and other relevant economic circumstances when it determined that Timothy had not shown a material change in circumstances justifying modification of alimony. The district court first determined that the change in Timothy's income was contemplated at the time of the original decree, because as an experienced farmer, Timothy would have known that farm prices are cyclical and a fluctuation in commodity prices was to be expected. We have said that a material change of circumstances constituting grounds for modification of a dissolution decree means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Collett v. Collett*, 270 Neb. 722, 707 N.W.2d 769 (2005). We have also said that while good cause is demonstrated by a material change in circumstances, any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). Therefore, the district court did not abuse its discretion in this case when it determined that future fluctuations in Timothy's farm income were within the contemplation of the parties at the time of the original decree and that the decrease in farm income was not a potential occurrence that was not known at the time of the initial decree.

[12] The district court also considered the relative financial circumstances of both Timothy and Martha when it determined that modification of alimony was not warranted. As we stated above, the determination of alimony is not based solely on income and instead focuses on the relative economic circumstances of the parties. We have further said that to determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree,

a trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought. See *Metcalf v. Metcalf, supra*. Therefore, it was appropriate for the district court to consider that although Timothy had experienced a change in income, Martha had also experienced changes in her economic circumstances. The court appropriately considered that Timothy's net worth at the time of the request for modification was substantially greater than Martha's, even after the equalization payment that was part of the property division. Because the parties' relative earning capacity is part of the evaluation of relative economic circumstances, the court properly noted that Timothy's net worth included significant income-producing property. We therefore conclude that the district court did not abuse its discretion when it concluded that although Timothy had experienced a change in income, a modification of his alimony obligation was not justified when considering the relative economic circumstances of the parties.

We conclude that the district court applied the correct standard for modification of alimony under § 42-365, and we further conclude that the district court did not abuse its discretion when it determined that Timothy had not shown a material change in circumstances that justified modification of alimony. Therefore, although the Court of Appeals applied an incorrect standard to review the district court's decision, we conclude that the Court of Appeals did not err when it affirmed the district court's denial of Timothy's request for modification of alimony.

## CONCLUSION

We conclude that when the parties have not agreed that an alimony provision may not be modified, an alimony provision that was agreed to by the parties as part of a property settlement agreement may later be modified for "good cause" in accordance with § 42-365, which allows for modification

of alimony when a party has shown a material change in circumstances that justifies modification. We further conclude that the district court applied the correct standard and that it did not abuse its discretion when it concluded that Timothy had not shown a material change in circumstances justifying modification of alimony. Therefore, although the Court of Appeals erroneously reviewed the district court's decision under a gross inequity standard, the Court of Appeals did not err when it affirmed the district court's order denying modification. We therefore affirm the decision of the Court of Appeals.

Affirmed.