IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HARPER V. HARPER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KATHRYN S. HARPER, NOW KNOWN AS KATHRYN S. TAYLOR, APPELLANT,

V.

CHRISTOPHER J. HARPER, APPELLEE.

Filed April 20, 2021.    No. A-20-671.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Timothy P. Sullivan for appellant.

Angelica W. McClure, of Kotik & McClure Law, for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Kathryn S. Harper, now known as Kathryn S. Taylor, appeals from an order of the district court for Lancaster County which granted Christopher J. Harper's complaint to modify the alimony award in the parties' decree of dissolution. Because we find no abuse of discretion by the trial court, we affirm.

BACKGROUND

The trial court entered a decree dissolving Kathryn and Christopher's marriage on June 25, 2013. Among other things, the court ordered Christopher to make alimony payments to Kathryn of $1,500 per month for a period of 120 months. The decree, which incorporated a property settlement agreement of the parties, stated that if Christopher became unemployed or retired during the term of alimony, such events would constitute sufficient reason for a review of alimony to determine if good cause exists for modification or termination of the alimony award.

- 1 -

On October 10, 2019, Christopher filed a complaint to modify, seeking to terminate his alimony obligation because he was no longer employed, had reached retirement age, and would not be seeking additional employment. His complaint also alleged that Kathryn had become eligible for New Zealand's equivalent to Social Security.

On December 2, 2019, Christopher filed a motion to temporarily suspend alimony. Following a hearing on the motion, the court granted the motion, suspending Christopher's alimony obligation as of December 31.

Trial on the complaint to modify was held on August 5, 2020. The evidence showed that at the time of the divorce Christopher was employed by Robuschi International as a national sales manager. He earned an annual salary of $75,000, and also received commissions averaging $20,000 to $25,000 per year. Shortly after the decree was entered in June 2013, he was terminated from his position and began working as an independent contractor with the same company on a commission-only basis. Christopher worked in that capacity until December 31, 2014, when the company withdrew the agreement.

In January 2015, he secured full-time employment as a senior product specialist with Gardner-Denver, a company that had purchased his former employer Robuschi International. His starting annual salary was $70,000, plus a bonus system where he made between $5,000 and $8,000 per year. In 2017, he got a $16,000 commission for a project he had worked on in 2013 and 2014. He also received stock in the company in 2017 and 2019. The shares were worth $20,000 at the time he received the stock.

Gardner-Denver offered Christopher early retirement in October 2018. He was unaware that a company merger was in the works at the time. He did not take the early retirement offer because his new wife was not eligible for Medicare and the cost of getting healthcare would have been "horrendous." He also wanted to continue building up his 401k a while longer. On August 29, 2019, he was terminated without cause and given a severance package of $18,200.

Christopher testified that in November 2019 he entered into a 1-year agency agreement with Mapro International to work part time and help it develop its business in the United States. Under the agreement he was self-employed, worked from his home office, and was only paid commissions on sales. He testified that at the time of trial he had earned a total of $445 pursuant to the agreement but had not received any payment.

Christopher testified that other than the agency agreement with Mapro International, he was not employed at the time of trial and had no intention of pursuing other employment. His only other source of income was Social Security, which he started receiving in October 2018 when he turned 66. At the time of trial, he was receiving $2,040 per month after deductions for Medicaid were taken out.

Christopher testified that he decided to retire after he was terminated from Gardner-Denver in August 2019 because of his age (he was 67 years old), as well as because of his health. He stated that he also decided to retire because his wife felt alienated in Nebraska and they were both unhappy in Nebraska so they wanted to move.

In regard to his health, Christopher had a seizure in 2016 that was caused by stress. A week later he collapsed, injuring his head and his back. He received psychiatric care for a year due to his head injuries. Christopher's doctors determined he has bipolar disorder, so he takes medication for that, as well as medication for anxiety and seizures. He also testified that he still had

psychological injuries, as well as a back injury. He determined that he no longer wanted to do the driving and flying that were integral parts of the jobs he had since the divorce. Christopher elaborated that after the seizure he did not feel "normal," and did not trust himself to drive. His wife did most of the driving and he sold his motorbikes even though he loves motorcycling.

Christopher and his wife moved to Massachusetts in December 2019 and he had been trying to find new doctors. Since moving, he had two virtual appointments with a general practitioner, had a physical appointment with that doctor scheduled in September 2020, as well as upcoming appointments with a spine pain clinic, a neurologist, a psychologist, and an endocrinologist. On cross-examination, Christopher testified that when he lost his job at Gardner-Denver in August 2019 he was offered but did not take continued health insurance coverage because of the cost and because he and his wife were in "reasonable good health" at the time.

Christopher and his wife purchased a home in Massachusetts that is considered low-income housing. They had to qualify for it by disclosing their current and potential future income. The cost of the home was $192,000. They put $60,000 down as an initial payment which came from the sale of Robuschi International stock ($29,000), $20,000 from his wife, and the rest came from his severance package. They took out a mortgage for $132,000.

In the dissolution decree Christopher was awarded the parties' residence, referred to as the Denton property, and the mortgage on such property became his obligation. Christopher sold the Denton property in February 2020 for $349,000. The proceeds from the sale were about $180,000 which he then used to pay off his $132,000 mortgage on his Massachusetts home. Christopher also acknowledged that on March 13 and March 24, 2020, he deposited $10,000 into an investment account on each of those dates, and on April 13 and April 21, he deposited $5,000 into the same account on each of those dates.

Kathryn testified that at the time the decree was entered in June 2013 she was living in New Zealand and had been there since December 2011. She had no source of income at the time the decree was entered. At the time of trial in the present case she was receiving superannuation payments as a resident of New Zealand, the equivalent to Social Security in the United States. The payments were $511.19 per week in New Zealand dollars, or about $1,370 per month in U.S. dollars. She also was receiving $874 per month from Christopher's Social Security. Kathryn testified that the Social Security payments are deposited into a United States bank account and she leaves that money in that account to use when she visits her children and grandchildren in the United States about once a year. Kathryn also testified that she helps out her children and grandchildren financially. She testified that she has paid her grandson's child support obligation every month for the past 6 years in the amount of $367 per month.

Following the hearing, the trial court entered an order finding as follows:

The material and substantial change in the parties' relative monthly income from the time of the original decree and the equities of the facts recited above require this Court to terminate [Christopher's] spousal support obligation. The Court cannot fault [Christopher] for wanting to retire at the age of 67 years when he is no longer employed due to no fault of his own. [Kathryn] now receives more in monthly income than [Christopher]. The original Decree required a review of alimony awarded "in the event the

- 3 -

Husband becomes unemployed or retires during the term of alimony." Both have occurred and constitute "good cause" for termination of the alimony award.

The trial court sustained Christopher's complaint to modify and terminated his alimony obligation of $1,500 per month as of December 31, 2019.

## ASSIGNMENT OF ERROR

Kathryn assigns that the trial court erred in finding that there had been a material and substantial change in circumstances such that good cause existed to terminate Christopher's alimony obligation.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Grothen v. Grothen*, 308 Neb. 28, 952 N.W.2d 650 (2020). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

Kathryn assigns that the trial court erred in finding that there had been a material and substantial change in circumstances such that good cause existed to terminate Christopher's alimony obligation. Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2016), alimony orders may be modified or revoked for good cause shown. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Id.* To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought. *Id.* The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. *Id.*

Because alimony may be modified only for good cause shown, a petition for modification will be denied if a change in financial condition is due to fault or voluntary wastage or dissipation of one's talents or assets. *Lambert v. Lambert*, 9 Neb. App. 661, 617 N.W.2d 645 (2000).

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in § 42-365 make it appropriate. *Collett v. Collett*, 270 Neb. 722, 707 N.W.2d 769 (2005). Section 42-365 therefore contemplates that economic circumstances other than income are relevant to the determination of alimony. *Grothen v. Grothen, supra.* Consideration of the relative economic circumstances of the parties includes consideration of not only income, but also other relevant factors. *Id.* In determining alimony, a court should consider the income and earning capacity of each party and the general equities of the situation. *Id.*

At the time of the decree, Christopher was making around $100,000 per year between his salary and commissions. His employment was terminated in August 2019 and he made the decision

to retire. At the time of the modification trial, he was receiving Social Security payments of $2,040 per month, or $24,480 per year. He also had a 1-year agency agreement with Mapro International, and at the time of trial he was owed $445 in commissions under that agreement but had not been paid. Therefore, his income and financial resources have substantially decreased since the time of the decree.

Kathryn argues that Christopher's change in financial condition is due to his own fault or voluntary wastage or dissipation of his talents or assets. See *Lambert v. Lambert, supra*. She contends he is at fault for his change in financial condition because he declined an offer of early retirement in 2018; he did not retire from Garner-Denver in August 2019, but was terminated; and his health did not prevent him from working but rather he chose to stop working for reasons unrelated to his health.

Christopher's failing to take early retirement in 2018 and choosing to continue to work cannot be held against him. He did not know that a merger was in the works at the time and there is nothing in the record to indicate he knew he would lose his job less than a year later. Further, while it is true that Christopher did not leave his job in August 2019 to retire but was instead terminated from his position, the termination was not because of any fault on his part. He was terminated without cause. At that point, Christopher was out of work and made the decision to retire, rather than seek new full-time employment at the age of 67. Such a decision cannot be said to be a voluntary wastage or dissipation of his talents or assets. As the trial court found, Christopher cannot be faulted for wanting to retire at the age of 67 when he is no longer employed due to no fault of his own.

In regard to his health, Christopher did not testify that he could not work, but that his health was a factor in his decision to retire. Since his seizure and fall in 2016, he has had mental and physical ailments. He received psychiatric care for a year due to head injuries. He was also diagnosed with bipolar disorder and takes medication for that as well as medication for anxiety and seizures. He still suffers from an injury to his back. Based on the status of his health in August 2019, he no longer wanted to do the driving and flying that were necessary for the types of jobs he had. He also testified that after the seizure he did not trust himself to drive. Christopher's health was a legitimate consideration in his decision to retire.

Kathryn also argues that good cause does not exist to terminate Christopher's alimony obligation because the deposits he made into an investment account in March and April 2020 indicates he has more income than he admitted. Christopher acknowledged that on March 13 and March 24, he deposited $10,000 into an investment account on each of those dates, and that on April 13 and April 21, he deposited $5,000 into the same account on each of those dates. Kathryn contends that Christopher offered no explanation as to the source of the $30,000, leaving no other reasonable conclusion but that the source of the funds was from employment. Kathryn is asking this court to assume the source or to speculate where the $30,000 came from. Christopher testified that other than the agency agreement with Mapro International, he was not employed. He testified that he had not been paid any money from Mapro International and his only other source of income was his monthly Social Security payments. There is nothing in the record to dispute Christopher's testimony or to support Kathryn's contention that the deposits came from Mapro International or other employment. Kathryn's counsel did not ask Christopher where the money came from and

there was no other evidence presented in regard to the source of the deposits. We will not speculate as to where that money came from.

The evidence also shows, as the trial court noted, that Kathryn's financial circumstances have changed and improved since the divorce decree. At the time of the decree she had no source of income, and at the time of the modification hearing she was receiving Social Security payments of $874 per month, as well as monthly superannuation payments of $1,370 per month. In addition, Kathryn testified that she helps out her children and grandchildren financially. Specifically, she had been paying her grandson's child support obligation in the amount of $367 per month for the past 6 years. She also indicated that she leaves the monthly Social Security payment in a United States bank account for use when she visits family about once a year. Her testimony indicates she does not need the alimony payments for her daily living expenses.

To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought. *Metcalf v. Metcalf,* 278 Neb. 258, 769 N.W.2d 386 (2009). The financial situation of both parties has changed since the decree was entered. The decree allowed for the alimony to be revisited if Christopher became unemployed or retired. Both of these events have occurred. As a result, Christopher's income has decreased. Conversely, Kathryn's financial situation has improved since the decree was entered.

There has been a material change in circumstances since the decree was entered and good cause existed to terminate Christopher's alimony obligation. Accordingly, the trial court did not abuse its discretion in granting Christopher's complaint to modify and terminating his alimony obligation.

## CONCLUSION

For the reasons discussed above, we conclude that the district court did not abuse its discretion when it determined that Christopher had shown a material change of circumstances warranting modification of the alimony awarded to Kathryn in the decree. As such, we affirm the order of the district court granting Christopher's request to terminate his alimony obligation.

AFFIRMED.