IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

NEWQUIST V. NEWQUIST

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ERNEST O. NEWQUIST, APPELLANT,

V.

KRISTINE K. NEWQUIST, NOW KNOWN AS KRISTINE K. DUBAS, APPELLEE.

Filed November 1, 2022.    No. A-21-845.

Appeal from the District Court for Hamilton County: RACHEL A. DAUGHERTY, Judge. Affirmed.

Steven M. Delaney and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

Nathan T. Bruner, of Bruner, Frank, Schumacher & Husak, L.L.C., for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Ernest O. Newquist appeals the order of the district court for Hamilton County, which denied his amended motion to modify his alimony obligation to Kristine K. Newquist, now known as Kristine K. Dubas. The district court found that neither Kristine's cohabitation with her significant other nor her financial situation constituted a material change in circumstances to warrant a modification of alimony and it awarded her attorney fees for the defense of the action. We find that the district court did not abuse its discretion in denying Ernest's motion and granting Kristine attorney fees; therefore, we affirm.

- 1 -

BACKGROUND

Ernest and Kristine married in July 1985. During their marriage, they had three children. In 2013, Ernest filed for dissolution. The parties were able to resolve all issues before trial except alimony and attorney fees. After trial, the district court ordered Ernest to pay Kristine $1,000 per month for 120 months in alimony and $500 per month in child support, which terminated when their youngest child reached majority in 2016. The district court also provided that the alimony would terminate if Kristine remarried. Ernest had asked the district court to add a cohabitation clause that would terminate alimony if Kristine cohabitated with someone, but the district court denied Ernest's request.

At the time of dissolution, Ernest made $94,992 per year, while Kristine made on average, $11,000 per year. Ernest had a bachelor's degree, and Kristine had a 2-year degree in dental assisting and had completed a floral design course. Throughout their marriage, Ernest worked full time outside of the home as a sales agronomist, and Kristine attended to the day-to-day needs of the children. Kristine worked part-time jobs to maintain flexibility in her schedule for the children, which resulted in her working up to three part-time jobs during the marriage. Because her part-time jobs did not offer benefits, she did not build any retirement savings of her own.

As a result of the divorce settlement, Kristine received a portion of Ernest's retirement funds that accumulated during the marriage and the marital home. Ernest received a portion of the acreage the couple jointly owned in Nance County, and the other portion was sold. Kristine subsequently sold the marital home and purchased another house in Aurora with her portion of the divorce settlement.

In 2020, Ernest filed a complaint to modify his alimony obligations and amended the complaint in February 2021. He asserted that there were material and substantial changes in Kristine's economic circumstances requiring that alimony be adjusted or terminated. The amended complaint alleged the material and substantial changes in Kristine's economic circumstances resulted from Kristine now working full time, cohabitating with her significant other in a new house, and renting out the house she bought after the divorce.

At the hearing on Ernest's motion, Kristine testified about the economic changes she has experienced since the divorce. She now works full time in the floral department of a grocery store with an estimated gross income of $48,000 for 2020. She has been dating her significant other for 6 years, and in May 2020, they had purchased a house together. Kristine rents out the house she purchased after the divorce and puts the rent money--which is $950 per month--toward the new house's mortgage. Kristine started receiving rent payments about the time Ernest filed his motion for modification, in which she received $6,175 for 6½ months' rent during 2020. Additionally, she pays the balance on a credit card their daughter uses, as well as their daughter's car insurance. Kristine also testified about the traveling she has done with her significant other and daughter since the divorce, which includes trips to Iceland, Mexico, and different places in the continental United States.

Kristine was questioned on how her circumstances have changed compared to her divorce trial testimony. In 2013, Kristine had testified that she was not looking for full-time employment "at this point in time," but she "always had [her] eyes open." She also testified that she needed alimony for her survival, as she anticipated at the time of the trial that she would need at least

$1,000 a month for rent or a mortgage payment. She estimated her expenses exceeded $4,000 a month while her income equaled about $2,000 per month. She had explained that the alimony would balance the disparity in her monthly expenses and monthly income. While her monthly expenses are currently half of what they were at the time of dissolution, she stated she still relies on the alimony and has had to depend on her savings to pay bills.

Ernest has also experienced economic changes since the divorce. His yearly gross salary now is around $120,000 as compared to the approximate $95,000 he was earning at the time of the divorce. He had also bought a new house in Lincoln. He testified that he has also traveled since the divorce but that many of his trips were for work. He provided documentation indicating he has over $500,000 accumulated in different retirement accounts. Ernest testified at the hearing that he also helps their daughter financially.

During cross-examination, Ernest admitted that he likely expected that Kristine would continue traveling after the divorce, since they had traveled while they were married. He also admitted that he expected her to work full time after the divorce because she usually made decisions that were in her best interest.

The district court denied Ernest's motion to modify alimony and ordered him to pay Kristine's attorney fees of $13,000. The district court reasoned that Ernest failed to show that Kristine's economic circumstances amounted to a material and substantial change. The district court recognized that cohabitation that improves the spouse's overall financial condition could warrant alimony modification but determined that was not the case here. Kristine is now making more money with a full-time job and has fewer monthly expenses, but Ernest is also earning more. The district court concluded that Kristine's earning potential is still less than Ernest's income, she has fewer assets, and she has had less years to build up her retirement savings; thus, the order for modification was denied.

Ernest subsequently filed a motion to alter or amend. At the hearing, Ernest argued against the amount of attorney fees awarded to Kristine claiming that part of the fees were related to a counterclaim that Kristine dismissed before trial. Kristine's attorney explained he had deleted all entries related to her counterclaim with the exception of one. The district court noted that the parties requested roughly the same amount in attorney fees, and it decreased Kristine's attorney fee request by $929.64 to reflect the entry related to Kristine's counterclaim. Following denial of his motion to alter or amend, Ernest filed this appeal.

ASSIGNMENTS OF ERROR

Ernest assigns that the district court erred in (1) denying his motion for alimony modification and (2) awarding Kristine attorney fees.

STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Finney v. Finney*, 273 Neb. 436, 730 N.W.2d 351 (2007).

ANALYSIS

*Motion for Modification of Alimony.*

To modify an alimony order, the plaintiff must show good cause. Neb. Rev. Stat. § 42-365 (Reissue 2016). Good cause is a showing of a material and substantial change in economic circumstances and is analyzed on a case-by-case basis. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). It is the moving party's burden to show that the changes were material and substantial. *Finney v. Finney, supra*. In determining good cause, the district court must decide on the totality of the circumstances by comparing the economic circumstances of the parties at the time of dissolution with the time when modification was sought. *Id*. If the changes can be attributed to the mere passage of time or were within the contemplation of the parties at the time of dissolution, then they cannot justify modification. *Metcalf v. Metcalf, supra.*

In *Grothen v. Grothen*, 308 Neb. 28, 952 N.W.2d 650 (2020), the Nebraska Supreme Court upheld the district court's order denying alimony modification despite the former husband's loss of income due to the fluctuation in commodity prices because income variation was within the contemplation of the parties at the time of the decree and the relative financial circumstances of the parties did not warrant it. *Id*. It explained that as an experienced farmer, the former husband would have known that commodity prices are cyclical; therefore, the decrease in farm income was not a potential occurrence that was not known at the time of the initial decree and, thus, did not constitute a material change in circumstances.

The *Grothen* court further explained that alimony is to provide support and maintenance when each parties' economic circumstances make it appropriate and that alimony should be based on more than just income; it should encompass the general equities of the situation and the economic circumstances of each party. *Id*. It approved the district court's consideration of the former husband's net worth which remained significantly higher than the former wife's as a factor in weighing the economic circumstances of the parties. *Id*.

Here, Ernest argues that his alimony obligation should be terminated for two reasons. First, Kristine's cohabitation has "greatly improved her financial circumstances" and second, that Kristine's economic circumstances have changed significantly. Brief for appellant at 10. Notwithstanding that we agree that Kristine's cohabitation and attainment of full-time employment were within the parties' contemplation at the time of the divorce as evidenced by Ernest's request for a cohabitation clause in the initial decree and his trial testimony, we will address each of Ernest's arguments in turn.

Cohabitation alone is not enough to terminate the supporting spouse's alimony. *Roth v. Roth*, 218 Neb. 417, 355 N.W.2d 516 (1984). In *Roth*, cohabitation that assisted the defendant to pay for rent and food did not amount to a material and substantial change. *Id*. For Kristine, her significant other helps pay the mortgage on their house and half of the utilities, but Kristine continues to be responsible for the rest of her finances and debt. Kristine receives similar benefits from cohabitation as seen in *Roth*, and they are not material and substantial. Ernest must show that

the cohabitation materially and substantially improved Kristine's overall financial condition to prevail.

Ernest argues that by cohabitating, Kristine is able to rent out her former home that she purchased with the divorce settlement proceeds and use that income to help pay the current mortgage. But this additional rental income does not represent a material and substantial change. An increased income is not dispositive of a material and substantial change, it is just a factor. *Grothen v. Grothen*, 308 Neb. 28, 952 N.W.2d 650 (2020). Kristine received an additional $6,175 from her rental property in 2020. The additional income was used for the new house's mortgage, which is a debt Kristine did not have at the time of the divorce. Given that Kristine is using the money to satisfy a new debt, the net value of the increased income cannot be a material and substantial economic change.

Next, Ernest argues that alimony should be terminated because Kristine now makes more money working full time compared to her part-time income during the marriage. Ernest contends that since Kristine testified during the divorce proceedings that she needed the alimony to survive, she no longer needs it because her income has increased. But this argument misstates the purpose of alimony. See *id*.

The purpose of alimony is for the support and maintenance of a spouse when the relative economic circumstances make it appropriate. *Id*. Alimony is not solely based on income; it is a balancing of equities. *Id*. Kristine is not precluded from collecting alimony because she makes money working a full-time job and owns a rental property. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (explaining there is no baseline of income or level of employment that would preclude alimony). The material and substantial change analysis is not based on Kristine's income alone, as it involves considering the relative economic circumstances of both parties. See *Grothen v. Grothen, supra*.

Since dissolution, Ernest has improved his economic circumstances as well. He now has an approximate gross income of $120,000 per year. He still has rental land in Nance County from the dissolution agreement. He also recently purchased a house. At the time of the modification hearing, Ernest had over $500,000 saved in various retirement accounts. Ernest's argument for modification fails because it relies solely on Kristine's circumstances without viewing them in relation to his own.

Kristine's economic circumstances have improved since the divorce, but her overall financial situation has not significantly changed, especially compared to Ernest's earning potential and assets. At dissolution, Kristine had spent 28 years of marriage working part-time jobs to give her the flexibility to take care of the children's day-to-day activities. Now, Kristine makes a gross income of $48,000. But this increase was likely anticipated during the original dissolution, as Ernest admitted at the hearing that he expected Kristine to obtain a full-time job after the divorce.

Ernest has also seen an income increase, which further supports that the general equities among the parties remain the same as they were at the time of the divorce. See *Sloss v. Sloss*, 212 Neb. 610, 324 N.W.2d 663 (1982) (denying modification because both parties increased income did not amount to good cause). Both parties have seen increased incomes, bought new homes, travel, and continue to support their daughter financially. Ernest is still making significantly more than Kristine and has substantially more saved in retirement accounts. Given the general equities

of the parties, the district court did not abuse its discretion in denying the motion for modification, and its order is affirmed.

*District Court's Attorney Fees Award.*

Ernest also assigns the district court erred by ordering him to pay Kristine's attorney fees, equaling $13,000. He argues that the district court abused its discretion by awarding Kristine attorney fees because her attorneys intentionally "drove up" litigation costs by filing a counterclaim, then dismissing it 8 months later. Brief for appellant at 17.

The uniform course of procedure in dissolution cases is to award attorney fees to the prevailing parties or against those that file frivolous suits, and this procedure extends to modifications of those cases. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id*.

The district court awarded Kristine attorney fees because Ernest failed to meet his burden of proof and it found $13,000 to be a fair and reasonable amount. The district court explained that it reduced the original attorney fees requested to exclude the one charge related to Kristine's dismissed counterclaim. We have reviewed the documentation offered in support of an attorney fee award and find no abuse of discretion in the court's order requiring Ernest to pay $13,000 for Kristine's attorney fees.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Ernest's motion for modification of alimony obligations, and its award of attorney fees to Kristine.

AFFIRMED.